**Anthony Teong–Chan GAW; Rossana W. Gaw, Appellants**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 93–1619.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1994.

Decided Jan. 31, 1995.

John M. Youngquist, San Francisco, CA, argued the cause and filed the briefs for appellants.

Gilbert S. Rothenberg, Atty., U.S. Dept. of Justice, Washington, DC, argued the cause for appellee. With him on the brief were Loretta C. Agrett, Asst. Atty. Gen., and Gary R. Allen, Atty., U.S. Dept. of Justice, Washington, DC.

Before GINSBURG, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Anthony and Rossana Gaw appeal the Tax Court's dismissal of their petition for a redetermination of an Internal Revenue Service notice of deficiency on the ground that the petition was not timely filed. Because we find that the Gaws' receipt of the notice was delayed as a result of the IRS's failure to exercise reasonable diligence in complying with the "last known address" rule, we conclude that the Gaws' petition was timely filed. We therefore reverse and remand to the Tax Court for its consideration of the merits of the Gaws' petition for redetermination.

## I.

Anthony Gaw was raised in Burma and Hong Kong as the son of a wealthy Asian textile businessman. He met Rossana Gaw, a daughter of a wealthy Hong Kong garment manufacturing family, in the United States when they were both students in the mid-sixties. They married and returned to Hong Kong to run their families' businesses. In 1977, Mr. Gaw established residence in the United States in order to qualify for U.S. citizenship. Once he obtained his citizenship he returned to Hong Kong. Mrs. Gaw is not a U.S. citizen. In 1987, the Gaws purchased a home in Hillsborough, California, so that their college-age children attending school in the United States would have a nearby home for vacations and holidays. Hong Kong remained the Gaws' principal residence.

In 1988, IRS examiner Kenneth Chan began investigating the Gaws' 1985, 1986, and 1987 joint income tax returns. According to the Gaws, their relationship with Kenneth Chan was strained from the outset because of what they allege was his unauthorized entry into their Hillsborough home during their absence. The Gaws appointed a San Francisco accountant, Sammy Chan (no relation to Kenneth Chan), as their personal representative to work with Kenneth Chan,

executing a power of attorney for Sammy Chan for tax years 1985 and 1986 and having him prepare their 1987 tax return.

In January 1989, Sammy Chan accompanied agent Kenneth Chan and another IRS agent to Hong Kong for an on-site review of the Gaws' books and records. Mr. Gaw was out of the country at the time. Although the record does not disclose why, the IRS agents used Interpol to attempt to contact Mrs. Gaw and persuade her to talk with them, an event that agent Kenneth Chan acknowledges angered the Gaws. The Gaws maintain that this event further strained the relationship between them and Kenneth Chan.

In August 1990, agent Kenneth Chan provided Sammy Chan with "proposed adjustments" to the Gaws' tax returns. In November 1990, the Gaws decided to retain legal counsel in Hong Kong and therefore informed Sammy Chan that they were terminating his power of attorney. Sammy Chan informed agent Kenneth Chan of his termination, but the Gaws never properly withdrew Sammy Chan's power of attorney, and the Gaws continued to use Sammy Chan for various communications with Kenneth Chan until January 7, 1991.

On December 18, 1990, Mr. Gaw wrote agent Kenneth Chan a registered letter, on letterhead bearing his Hong Kong home address of 43A Stubbs Road. The letter began:

> I have just returned from Rangoon, Burma where I am now stationing. I understand from my office that you have some legal documents which you are obligated by law to deliver to me by hand or by certified mail. To ensure that your mails will reach me, please send them to my address as shown above. I'll be in Hong Kong between now and January 15, 1991 and after that I'll be living in Burma for one year to negotiate with the Burmese government for the return of my father's business that the government had nationalized in 1963.

The letter went on to state:

> In order to avoid you making hasty and erroneous assessment and conclusion, I suggest that you make an appointment to come to meet me in Hong Kong before my departure to Burma. I'll make myself available here to see you together with my tax attorney, whom I am in the process of appointing to discuss and cooperate with you on points which you are unclear of.

App. 140–41. Kenneth Chan received but did not respond to this letter. App. 113, 218.

The Gaws subsequently retained Peter Edwards of the Hong Kong law firm of Johnson Stokes & Master, but they did not file a power of attorney with the IRS to this effect. On January 16, 1991, Johnson Stokes sent a registered letter to Kenneth Chan, which Chan received but again did not answer. App. 114, 230–31. This letter, which we quote in full because of its importance to this case, read:

> We act upon the instructions of Mr Anthony Gaw of Victoria Heights, 18th Floor, 43A Stubbs Road, Hong Kong.

> We refer to Mr Gaw's letter to you of 18th December, 1990 in which, inter alia, he requested that any documents which it was necessary to serve upon him should be sent to him at his above address in Hong Kong, which we understand to be his registered address for U.S. tax purposes. Mr Gaw has so far received no response to his letter nor has he received any documents from you.

> As indicated in his letter of 18th December, Mr Gaw will be away in Burma for approximately the next two months at the least, in which country it will be very difficult to contact him. Any documents forwarded to his address in Hong Kong cannot be dealt with because there is no one to receive them.

> Mr Gaw is anxious that you should receive every cooperation in any proper enquiries you wish to make concerning his tax affairs in the United States. Consequently, he wishes to request that you would please forward to us (reference PSAE) copies of any papers or documents which you wish to serve upon him and we will do what we can to answer any questions which you have. We can then make sure that Mr Gaw receives such copies on his next return to Hong Kong.

> We repeat that Mr Gaw wishes to cooperate fully in your enquiries. So far,

however, he has heard nothing further from you since the correspondence of July, 1990.

Please let us know if we can be of any assistance in this matter.

App. 146–47. Kenneth Chan testified that when he received this letter he forwarded it to the IRS District Counsel's office to determine how to respond, but that he received no reply and did not pursue the matter further. App. 231, 235–36.

Kenneth Chan also received a certified letter dated June 5, 1991, which again bore the Gaws' Stubbs Road address in Hong Kong, in which Mr. Gaw stated:

I had waited in Hong Kong until January 26, 1991 for your response to my letter of December 18, 1990 and so far I have received none. This is also to inform you that I will be stationing in my native country, Burma, from now until June, 1992.

App. 150. As of the time of receipt of this letter, the IRS's file thus contained two letters from Mr. Gaw informing the IRS that he was temporarily away from his Hong Kong address, and a third letter from Johnson Stokes confirming this and requesting that the IRS communicate with it regarding the investigation of the Gaws' tax affairs.

By January 1991, Kenneth Chan had determined that the IRS should send the Gaws a notice of deficiency for the three tax years under his review, but he did not complete the write-up of his report until May 1991. The IRS did not send the notice until Oct. 8, 1991, the day the statute of limitations on assessing a tax deficiency otherwise would have expired for the 1987 return under review. The notice asserted a total deficiency for the three years of over $28 million, including penalties and interest. Mailing of the notice commenced a 150–day period during which the Gaws could petition the Tax Court for a redetermination of the IRS's calculation of deficiency. 26 U.S.C. § 6213(a) (1988). The mailing also tolled the statute of limitations on assessing the deficiency. 26 U.S.C. § 6503(a) (1988). The IRS sent the notice by certified mail to a Hillsborough, California address that the Gaws had used on their 1988 joint return, and also by registered mail to the Gaws' Hong Kong address, which the Gaws had used on their 1989 joint return. The IRS did not send copies to either Johnson Stokes or to Sammy Chan. App. 238–40.

The post office returned the California notice as undeliverable. The manager of the Gaws' Hong Kong apartment complex returned the Hong Kong notice to the IRS under a cover letter, dated October 21, 1991, explaining that Mr. Gaw was out of town until December 1991, and that the IRS could resend the notice at that time for his personal receipt. App. 132. On December 9, the apartment manager again wrote to the IRS, describing Mr. Gaw's revised plans to return to Hong Kong around January 8, 1992. App. 133. The IRS did not resend the notice.

On March 23, 1992, approximately two weeks after the lapse of the 150–day period for seeking redetermination, the IRS issued assessments and commenced enforcement proceedings to collect the Gaws' asserted deficiencies, and shortly thereafter the IRS issued various tax liens and levies. These enforcement activities brought the deficiency notice to the Gaws' attention for the first time. The Gaws' U.S. attorneys obtained an actual copy of the notice on April 6, 1992, by contacting IRS agent Kenneth Chan.

On April 17, 1992, the Gaws filed their Petition for Redetermination, arguing that under this court's decision in *Crum v. Commissioner*, 635 F.2d 895 (D.C.Cir.1980), their petition was timely. They also sought to enjoin the collection proceedings. The Commissioner moved to dismiss the petition as untimely, but agreed to hold the pending collection efforts in abeyance until the Tax Court issued its decision on the petition. The Gaws then cross-moved for dismissal, claiming that the notice was invalid because the IRS had not mailed it to the Gaws' last known address.

In June 1992, the Tax Court held a three-hour evidentiary hearing on the motions to dismiss, but withheld issuance of its opinion pending what proved to be over a year of unsuccessful settlement discussions. The Tax Court then issued its opinion in August 1993, dismissing the petition for reconsideration as untimely. *Gaw v. Commissioner*, 66 T.C.M. (CCH) 466, 1993 WL 325085 (1993).

Because the Gaws were unable to post the required bond of twice the amount in dispute, the Tax Court did not stay its decision pending appeal, and the IRS recommenced its collection proceedings. The Gaws appeal the Tax Court decision.

## II.

The legal standards governing this case are well-known and not difficult. They begin with section 6212 of the Internal Revenue Code, which authorizes the IRS to send notice of its determination of a tax deficiency to the taxpayer via registered or certified mail, and provides that such notice shall be sufficient "if mailed to the taxpayer at his last known address." 26 U.S.C. § 6212(a), (b) (1988). Once the IRS sends a notice of tax deficiency to the taxpayer's last known address, the taxpayer can obtain review of the IRS determination by either (1) petitioning the Tax Court for a redetermination of the deficiency within 90 days if the notice was sent to a U.S. address, or within 150 days if the notice was sent to an address outside the U.S., *see* 26 U.S.C. § 6213(a); or (2) paying the deficiency, including all penalties and interest, and then filing an administrative claim for a refund of overpayment, *see* 26 U.S.C. § 6511(a)–(c) (1988). The IRS may not commence any collection efforts until the expiration of the 90– or 150–day period for filing a petition for redetermination and until the Tax Court's final decision with respect to any such petition. 26 U.S.C. § 6213(a).

■ The legislative history of the last known address rule suggests that Congress considered but rejected requiring actual receipt of notice because it would impose an almost impossible burden on the IRS to prove actual receipt and to keep track of the whereabouts of all taxpayers. *See* 65 Cong. Rec. 2969–70 (1924). Instead, Congress adopted the last known address rule, thus giving the IRS a safe harbor: a notice sent to the last known address is valid whether or not the taxpayer actually receives it. *See, e.g., Pomeroy v. United States,* 864 F.2d 1191, 1195 (5th Cir.1989); *King v. Commissioner,* 857 F.2d 676, 679 (9th Cir.1988).

■ The Internal Revenue Code, however, does not define the term "last known address." We have interpreted the phrase to mean "the taxpayer's last permanent address known by the Commissioner or the last known temporary address of a definite duration to which the taxpayer has directed the Commissioner to send all communications." *E.g., Marks v. Commissioner,* 947 F.2d 983, 984 (D.C.Cir.1991) (internal punctuation and citation omitted). The taxpayer has the obligation in the first instance to give the IRS "clear and concise notification" of an address change. *E.g., id.* at 984–85; *Crum,* 635 F.2d at 898; *Alta Sierra Vista, Inc. v. Commissioner,* 62 T.C. 367, 374, 1974 WL 2662 (1974), *aff'd mem.,* 538 F.2d 334 (9th Cir. 1976). In the absence of the taxpayer's "clear and concise notification" of an address change, the IRS generally is allowed to treat the address on the taxpayer's most recently filed return as the last known address. *Marks,* 947 F.2d at 985. But if before mailing the deficiency notice the IRS becomes aware that the address on the return is incorrect, then the IRS has an equitable obligation, which courts will enforce, to use "reasonable diligence" based on all the surrounding circumstances to ascertain the taxpayer's correct address. *See, e.g., Ward v. Commissioner,* 907 F.2d 517, 521–23 (5th Cir.1990); *Mulder v. Commissioner,* 855 F.2d 208, 211 (5th Cir.1988).

■ The question before us, then, is whether the IRS exercised reasonable diligence in complying with the "last known address" rule when it issued the Gaws' notice. This is essentially a question of fact that turns on the information available to the IRS at the time it issued the notice. *See Ward,* 907 F.2d at 521; *Mulder,* 855 F.2d at 211. We review the Tax Court's determination of this question for clear error. *See Powell v. Commissioner,* 958 F.2d 53, 55 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992); *Pomeroy,* 864 F.2d at 1194–95; *King,* 857 F.2d at 679.

## III.

■ The Gaws argue that the IRS disregarded "clear and concise notice" that they would not be at their permanent Hong Kong

address for an extended time after January 1991, and that during this period they desired the IRS to send copies of official documents to Johnson Stokes. The Gaws acknowledge that they had not filed a power of attorney for Johnson Stokes. They assert, however, that the IRS is not bound strictly to its power of attorney rules, and that under the circumstances it should have sent a copy of the notice to Johnson Stokes. Pointing to IRS agent Kenneth Chan's alleged personal animosity towards them, the Gaws further assert that he willfully ignored their efforts to remain in contact with the IRS during their stay in Burma.

The Commissioner relies on the technical requirements of the last known address rule, arguing that the IRS sent the notice to the address that Mr. Gaw's December 18 letter had expressly indicated was his proper address for official communications, an address that the Johnson Stokes letter of January 16 acknowledged was the Gaws' "registered address for U.S. tax purposes." The Gaws' apartment manager received the notice, the Commissioner continues, and had the manager not returned it, the Gaws in fact would have received the notice in December 1991, upon their return from Burma, in time to file a petition for redetermination. Absent a direct request from the Gaws, the Commissioner claims the IRS had no obligation to send a copy of the notice to Johnson Stokes. And without a power of attorney on behalf of Mr. Edwards or someone else at the Johnson Stokes firm, the Commissioner says the IRS simply could not have sent them a copy of the notice without risking liability for unauthorized disclosure of the Gaws' confidential information. *See* 26 U.S.C. § 6103 (1988 & Supp. V 1993).

The Tax Court concluded that because the IRS knew only that Mr. Gaw would be in Burma, but never acquired any knowledge of his specific whereabouts to which the notice could be sent in lieu of his Hong Kong address, the Hong Kong address continued to constitute Mr. Gaw's last known address. The Tax Court rejected the Gaws' arguments that the IRS had failed to exercise reasonable diligence in ascertaining their last known address; found that the Johnson Stokes letter did not authorize the IRS to mail a copy of the notice to the firm; and concluded that but for the intervention of the apartment manager the notice would have been waiting for the Gaws at their Hong Kong apartment upon their return from Burma, and in any event that the notice was valid as to Mrs. Gaw because Mr. Gaw's letters had not expressly stated that Mrs. Gaw would also be in Burma.

■ We first dispose of the Tax Court's conclusion that the notice was valid with respect to Mrs. Gaw because she had never changed her address or indicated that she would be away from Hong Kong. As we read the record, the IRS consistently treated Mr. and Mrs. Gaw as having the same address and as otherwise acting together, with Mr. Gaw serving as the primary taxpayer on IRS records. *E.g.,* App. 19, 48–50, 61–62, 67, 96–97. The IRS's unified treatment of the Gaws conforms with its general practice of maintaining only one address for joint filers, under only the primary or first-listed spouse's taxpayer identification number, unless either spouse has notified the IRS that they have established separate addresses. *See Abeles v. Commissioner,* 91 T.C. 1019, 1023, 1028–29, 1988 WL 129221 (1988). Despite the Commissioner's claim to the contrary, nothing in *Abeles v. Commissioner* suggests that because Mr. Gaw's letters do not mention Mrs. Gaw, they should be presumed a *de facto* notification that he and Mrs. Gaw were establishing separate addresses. *Abeles* instead held that one spouse's subsequent filing of a *separate return* at a different address than that used on a previously filed *joint return* sufficed to establish a separate address for that spouse, even if the notification did not establish that the taxpayers no longer "cohabited." *Id.* at 1029–30, 1035. In this case neither the letters from the Gaws nor anything else in the record indicates that Mr. Gaw intended the information about his whereabouts to be limited to him, rather than to apply equally to Mrs. Gaw. In fact, the Johnson Stokes letter explained that "there is no one to receive" any documents sent to the Gaws' Hong Kong address, and travel records before the Tax Court support the conclusion that Mrs. Gaw was in Burma with her husband. In these

circumstances, the Tax Court clearly erred in finding that a notice mailed to the Gaws' Hong Kong address provided adequate notice to Mrs. Gaw whether or not it provided adequate notice to Mr. Gaw. We thus must consider whether the IRS violated the last known address rule with respect to Mr. Gaw—and therefore with respect to Mrs. Gaw as well.

We agree with the Tax Court that the IRS lacked authority to mail the notice to Johnson Stokes because it did not have a power of attorney for the firm. The Gaws argue that in other circumstances the IRS has ignored the power of attorney requirement, and should have done so here, but we do not reach this issue. Instead, we conclude that under the circumstances, the IRS should have contacted Johnson Stokes to inform it that the IRS would not provide it with copies of a deficiency notice unless the firm submitted a power of attorney. In light of the IRS's failure to take this simple step, we find clearly erroneous the Tax Court's conclusion that the IRS exercised reasonable diligence.

■ When the IRS knows or should know that a deficiency notice sent to the taxpayer's last known address will not reach the taxpayer, the IRS's equitable obligation to exercise reasonable diligence requires more than merely mailing the notice to that address. Instead, in such a case the IRS must make a reasonable effort to ascertain an address at which the taxpayer will receive the notice. *See Mulder v. Commissioner*, 855 F.2d 208, 212 (5th Cir.1989); *see also Ward v. Commissioner*, 907 F.2d 517, 522–23 (5th Cir. 1990). *Mulder* involved a deficiency notice that the IRS had perfunctorily mailed to the same address from which the post office had already returned two previous IRS mailings as undeliverable. The court held that when the IRS knows or should know that the taxpayer has moved, the IRS bears a greater burden in satisfying its duty of reasonable diligence. 855 F.2d at 212. The precise nature of the effort required to meet this "greater burden" will vary depending entirely on the circumstances of each case, including the information in the IRS's files and how the IRS became aware that the last known address is not correct. Of course, if

by the exercise of reasonable diligence the IRS still is unable to obtain a new address, then the IRS meets its statutory and equitable obligations by mailing the deficiency notice to the last known address. We stress also that the equitable obligation to exercise reasonable diligence will not arise when a taxpayer deliberately seeks " 'to obscure the change in his address so as to confound the IRS' " or otherwise attempts to avoid receiving IRS communications. *Marks*, 947 F.2d at 986 (quoting *Crum*, 635 F.2d at 899).

In this case, the IRS knew or should have known that in all probability the notice sent to Hong Kong on October 8, 1991, would not reach the Gaws in time for them to file a petition for redetermination. As of that date, the IRS had received three letters— two from Mr. Gaw and one from Johnson Stokes—each plainly stating the Gaws' plans to be in Burma for an extended period. While Mr. Gaw's December 18, 1990, letter did state that the IRS should send its mail to his Stubbs Road address in Hong Kong, the fair reading of this letter is that Mr. Gaw anticipated that the IRS would respond before his planned departure to Burma in January of 1991. This reading is confirmed by the Johnson Stokes letter of January 16, 1991, and Mr. Gaw's June 5, 1991 letter. Yet the IRS made no effort to take the information about the Gaws' whereabouts into account, or indeed to respond to these communications in any way. Although Kenneth Chan forwarded the Johnson Stokes letter to the IRS district counsel for advice, the letter apparently languished there without further IRS action. And the June 5 letter, while making no reference to the Johnson Stokes letter, confirmed that the Gaws would continue to be absent from Hong Kong for an extended period.

The correspondence in the Gaws' IRS file—all of which should have been easily available to the IRS employee preparing to mail the notice—also made clear that the IRS had a simple alternative: contact Johnson Stokes. The IRS knew that Johnson Stokes was trying to act for the Gaws, at a time when the Gaws had informed the IRS they were appointing a tax attorney in Hong Kong and the IRS had ceased communicating

with the Gaws' previous representative, Sammy Chan. A letter responding to Johnson Stokes' January 16 communication, explaining that the IRS would not provide it with copies of documents concerning the Gaws' tax returns until the firm had submitted a power of attorney, could have averted this entire proceeding. Particularly in view of the large amount of the asserted deficiency, we are concerned that the IRS made no effort to provide this simple advice to Johnson Stokes. The IRS obviously knew how to provide such guidance: for instance, after the Gaws had terminated Sammy Chan's representation, agent Kenneth Chan told him that he should advise the Gaws to execute a new power of attorney. App. 224. Yet when it came time to mail the notice on October 8, 1991, the IRS ignored clear information in its administrative file regarding the whereabouts of the Gaws and made no effort to ensure that any actual communication occurred with either the Gaws or their representatives. The Tax Court's conclusion that the IRS satisfied its obligation to exercise reasonable diligence is thus not supported by the facts and is clearly erroneous.

The Tax Court's conclusion that but for the intervention of the apartment manager, the Gaws would have received the notice two months later upon their return from Burma, is likewise clearly erroneous. For one thing, its premise is wrong: Had the apartment manager not intervened by accepting the registered letter, the post office presumably would have returned the notice to the sender as unclaimed or undeliverable, and therefore the notice would not have been awaiting the Gaws upon their return from Burma. More important, the IRS's failure to exercise reasonable diligence occurred months earlier, a fact that the apartment manager's subsequent intervention could not alter. The apartment manager's intervention is thus irrelevant.

## IV.

▮ Having concluded that under the circumstances of this case the IRS failed to satisfy its equitable obligation to use reasonable diligence to ascertain an address at which the Gaws would have received the deficiency notice, we turn to the question of the appropriate remedy. The Gaws seek either a finding that the notice is invalid or a remand of their petition for redetermination. The Commissioner takes the somewhat surprising position that our only option is to invalidate the notice, a result that would preclude the IRS from assessing or collecting the deficiency because the statute of limitations for the tax years in question now has run. The Commissioner, however, ignores the fact that the equitable obligation to use reasonable diligence—an obligation that we stress arises only when the IRS knows or should know that the taxpayer will not receive the notice at the last known address—is distinct from and supplementary to the statutory obligation imposed by the last known address requirements of section 6212. Because the IRS complied with the technical requirements of section 6212 when it sent the deficiency notice to the Gaws' Hong Kong address by registered mail, we hold that the notice was valid and that it tolled the statute of limitations under section 6503(a)(1). But because the IRS failed to satisfy its equitable obligation to use reasonable diligence to ascertain an address at which the Gaws would receive the deficiency notice, we also hold that the time for the Gaws to file a petition for redetermination did not begin to run until the Gaws actually received that notice. *See Crum*, 635 F.2d at 901; *Powell*, 958 F.2d at 57.

We thus conclude that the Gaws' petition for redetermination was timely. They received the notice on April 6, 1991, and filed their petition for redetermination only eleven days later, on April 17, 1991, well within the 150–day period of section 6213(a). We reverse the Tax Court's dismissal of the Gaws' petition for redetermination and remand it to the Tax Court for consideration on the merits.

*So ordered.*