132 T.C. No. 3

UNITED STATES TAX COURT

ARLENE L. POLLOCK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17755-07.                    Filed February 12, 2009.

        P sought relief from joint liability for unpaid
taxes under sec. 6015, I.R.C.  R sent her a notice of
determination denying relief, but at a time before
Congress gave the Tax Court jurisdiction to review such
denials.  R then sought to collect the taxes in a lien-
enforcement action.  This prompted the District Court
hearing the lien-enforcement action to invoke the
doctrine of equitable tolling and give P 30 days to
file a petition with the Tax Court.  P filed her
petition within the time limit set by the District
Court's order.  R moved to dismiss for lack of
jurisdiction because P filed her petition more than 90
days after R had mailed the notice of determination to
her.

        Held:  We are not barred from reviewing the
District Court's order.

        *Held, further*:  Sec. 6015, I.R.C., sets a
jurisdictional time limit which may not be equitably
tolled.  The Tax Court has no jurisdiction to review
P's petition.


Jason Grimes, for petitioner.[1]

Leonard Provenzale, for respondent.


                          OPINION


HOLMES, Judge:  The IRS sent Arlene Pollock a notice of
determination denying her request for innocent-spouse relief on
April 27, 2006.  She filed a petition seeking review of that
notice more then a year later on August 9, 2007.  The Code gives
taxpayers only 90 days to file.  Pollock waited 469 days.  Do the
math, the Commissioner tells us, and dismiss her petition for
lack of jurisdiction.

Not so fast, says Pollock.  On the day that the Commissioner
mailed his notice of determination, the Government's position was
that the Tax Court lacked jurisdiction to review it.  This
position had already been endorsed by the Ninth Circuit,[2] and
would be again five days later by the Eighth Circuit.[3]  On July

---

[1] The Court acknowledges the outstanding *pro bono* effort of petitioner's counsel in this case.

[2] Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. Feb. 28, 2006), revg. 118 T.C. 494 (2002), vacating 122 T.C. 32 (2004).

[3] Bartman v. Commissioner, 446 F.3d 785 (8th Cir. May 2,
                                        (continued...)

25, 2006, two days before Pollock's 90-day window would shut, we ourselves decided that we had no jurisdiction.[4] And on August 25, 2006, the Chief Counsel of the IRS told his lawyers to move to dismiss any such petitions still pending before us for lack of jurisdiction. Congress later amended the Code to give us jurisdiction and made the change effective for all taxes "arising or remaining unpaid on or after [December 20, 2006]."[5] Pollock's taxes remain unpaid to this day. How can the usual 90-day limit apply to her?

The question presented: Must we dismiss Pollock's case for failure to file a petition with us when we would have had no jurisdiction over it?

## Background

Pollock married in 1986, and had two children. She has an eighth-grade education and was a stay-at-home mom for most of the marriage. Differences between her and her husband grew and became irreconcilable, and they divorced in November 2000, with Pollock getting the family's home. Left behind from the marriage was an enormous tax debt--for the years 1995-99, the Pollocks jointly owed a total of $183,331, which with interest has grown

---

[3](...continued)
2006), affg. in part, vacating in part T.C. Memo. 2004-93.

[4] Billings v. Commissioner, 127 T.C. 7 (2006).

[5] Tax Relief and Health Care Act of 2006 (TRHCA), Pub. L. 109-432, div. C, sec. 408(a), (c), 120 Stat. 3061, 3062.

to over $400,000.  Neither Pollock paid and, between August 2001 and May 2002, the IRS sent them notices that it had filed federal tax liens (NFTLs) against them.

It is from this debt that Pollock seeks relief.  That liability is hers because the Code makes spouses who sign a joint return jointly and severally liable for any tax due.  Sec. 6013(d)(3).[6]  But relief is available in some cases under section 6015.  And one way for a spouse to win relief under that section is to show that, "taking into account all the facts and circumstances, it is inequitable to hold [her] liable for any unpaid tax or any deficiency (or any portion of either)."  Sec. 6015(f)(1).  Our jurisdiction over such nondeficiency stand-alone petitions[7] brought under section 6015(f) was unclear in 2006.

Even before that, back in 2002 when the Commissioner sent his last NFTL to the Pollocks, we were already analyzing our jurisdiction over such cases.  In Ewing v. Commissioner, 118 T.C. 494 (2002) (Ewing I), we held--at the suggestion of the

_____

[6] Unless otherwise indicated, all section references are to the Internal Revenue Code.

[7] "Nondeficiency" because the IRS accepted the return computing the unpaid tax as filed and asserted no deficiency, and "stand-alone" because the claim for innocent-spouse relief was made under section 6015 and not as part of a deficiency action or as part of a collection due process hearing under section 6320 or 6330.  See Billings, 127 T.C. at 7.

government--that we did have jurisdiction.[8]  Our initial analysis did not go unnoticed.  In 2004 the Second Circuit expressed doubt.  Maier v. Commissioner, 360 F.3d 361, 363 n.1 (2d Cir. 2004), affg. 119 T.C. 267 (2002).  The Government then changed its mind and argued that we had no jurisdiction when Ewing I was appealed.  In February 2006, the Ninth Circuit agreed with the Government's new position.  Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), revg. Ewing I, vacating 122 T.C. 32 (Ewing II).  Pollock began the process that would lead to this case sometime between Ewing I and the Ninth Circuit's reversal by filing a Form 8857 with the IRS.[9]

On April 27, 2006, four months after the Ninth Circuit ruled in Ewing, the IRS mailed a notice of determination denying innocent-spouse relief to Pollock.  Prominently featured on its first page was a warning that she had only 90 days to file a petition challenging it.  But where?  The notice said Tax Court, but just days after the Commissioner mailed the notice to

---

[8] IRS litigation policy at the time was to concede our ability to hear all claims for relief under section 6015(f).  See IRS Chief Counsel Notice N(35)000-338 (June 5, 2000).

[9] Form 8857, Request for Innocent Spouse Relief, is filed by a spouse seeking relief from joint and several liability and related penalties.  Pollock claims she submitted Form 8857 in August 2002.  The Commissioner claims that she first requested innocent-spouse relief in December 2005, and then amended her Form 8857 in January 2006.  We sidestep this dispute; resolving it would not affect our analysis of the Commissioner's motion to dismiss.

Pollock, the Eighth Circuit in <u>Bartman v. Commissioner</u>, 446 F.3d 785, 787 (8th Cir. 2006), affg. in part, vacating in part T.C. Memo. 2004-93, adopted the Ninth Circuit's position. The final blow came on July 25, 2006, when we revisited the question and agreed with these circuit courts that we did not have jurisdiction over cases like Pollock's. See <u>Billings v. Commissioner</u>, 127 T.C. 7 (2006). Two days later, Pollock's 90-day deadline for filing with us expired. She had at this point never filed a petition contesting the IRS's denial of relief with us or any other court.

Later that summer, the IRS's Office of Chief Counsel notified IRS attorneys about how they should handle section 6015(f) nondeficiency stand-alone cases after <u>Billings</u>. IRS Chief Counsel Notice CC-2006-020 (Aug. 25, 2006). This notice instructed IRS attorneys to file motions to dismiss for lack of jurisdiction in all nondeficiency stand-alone cases. <u>Id.</u> Although this was already happening with success (as the Ninth Circuit's ruling in <u>Ewing</u> proved), this notice coordinated the effort and changed the IRS's previous official stance that we had jurisdiction over these cases. IRS Office of Chief Counsel Notice CC-2006-020 (Aug. 25, 2006); see *supra* n.8.

A month later, the Department of Justice began a collection suit against the Pollocks by filing a lien-enforcement action in the Southern District of Florida. The Government's goal was to

collect more than $378,000 in income-tax debt from both Pollocks, and more than $318,000 in an unpaid trust-fund-recovery penalty owed by Pollock's former husband alone.[10]  If the Government won, it would be able to foreclose on the home transferred to Pollock during the divorce settlement.

On December 20, 2006, Congress amended section 6015 to grant us jurisdiction to hear section 6015(f) nondeficiency stand-alone cases.  TRHCA, div. C, sec. 408(a), (c); sec. 6015(e)(1)(A).  The amendment was effective for tax liabilities "arising or remaining unpaid on or after the date of the enactment."

In 2007, the Commissioner moved for summary judgment against Pollock and her former husband in District Court.  Pollock argued that she is entitled to innocent-spouse relief under section 6015(f), but everyone now acknowledges that this is not a defense to a lien-enforcement action.[11]  On July 9, 2007, the District

_____

[10] Taxes that employers withhold from their employees' wages are known as "trust fund taxes" because they are deemed a special fund in trust for the United States under sec. 7501(a).  The Commissioner may collect unpaid employment taxes from a "responsible person" within the company; that is, someone who was required to pay over the tax.  The money that is collected is called a trust-fund-recovery-penalty tax.  Sec. 6672; see also Bennett v. Commissioner, T.C. Memo. 2008-251.

[11] This may or may not be correct.  United States v. Shanbaum, 10 F.3d 305, 310 (5th Cir. 1994) and United States v. Haag, 94 AFTR 2d 6665, 2005-1 USTC par. 50,131 (D. Mass.2004), affd. 485 F.3d 1 (1st Cir. 2007), don't question the jurisdiction of Article III courts to entertain innocent-spouse defenses, while in both cases rejecting them on other grounds.  United States v. Boynton, 99 AFTR 2d 920, 2007-1 USTC par. 50,328 (S.D.

(continued...)

Court granted summary judgment against Pollock's former husband. But on July 12 the same court stayed the case against Pollock and granted her 30 days to bring a claim for relief before our Court.

In its order, the District Court explained that the special circumstances of this case--namely, the disordered state of the law in 2006--justified tolling the 90-day limit:

> Ms. Pollock's failure to file a petition in the ninety-day window is excusable, given the uncertainty in the law over this issue. I find that the ninety-day review period for 6015(f) petitions is analogous to the ninety-day window for filing a complaint with the EEOC in Title VII cases. In that situation, the Supreme Court has held that the filing window is a "requirement subject to waiver, estoppel, and equitable tolling." *Zipes v. TWA*, 455 U.S. 385, 393 (1982). Waiver and equitable tolling should also be available to those seeking review of a denial of innocent spouse relief, although like the Title VII cases, it should be granted sparingly. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984).

> Ms. Pollock's situation merits either a waiver or tolling of the ninety-day time period for filing a petition for review with the tax court. The uncertain state of the law on the jurisdiction of the tax court at the time she would have had to file the petition excuses her failure to file. * * *

---

[11](...continued)
Cal. 2007), following United States v. Feda, 97 AFTR 2d 1985, 2006-1 USTC par. 50,330 (N.D. Ill. 2006), does question the jurisdiction of District Courts to hear the merits of innocent-spouse defenses raised as a defense against enforcement actions. It concludes that section 6015 limits jurisdiction to reviewing denials of relief in cases before the Tax Court, sec. 6015(e)(1), and refund suits before a District Court or the Court of Federal Claims, sec. 6015(e)(3).

United States v. Pollock, No. 06-80903 (S.D. Fla., July 12, 2007) (order staying case, granting defendant Arlene Pollock 30 days to file for relief in United States Tax Court).

Pollock filed her petition with us by the deadline set in the District Court's order, and we must now decide whether we have jurisdiction to hear her case. She has been a Florida resident throughout, and we held oral argument in Miami on the Commissioner's motion to dismiss this case for lack of jurisdiction.

### Discussion

Our Court is one of limited jurisdiction, and we hear only those cases Congress tells us we can. Sec. 7442; Kluger v. Commissioner, 83 T.C. 309, 314 (1984). Like other federal courts, however, we do have jurisdiction in all cases to decide whether we have jurisdiction. Kluger, 83 T.C. at 314-15. And in this particular case we look at four questions:

- ! What weight do we give to the District Court's order?

- ! Is section 6015(e)'s deadline for filing petitions with us a jurisdictional limit or a statute of limitations?

- ! Can we construe section 6015(e) to give us jurisdiction over this case?

- ! Does the effective date of the law granting us jurisdiction apply to Pollock's case in a way that would give us jurisdiction?

I.   <u>The District Court's Order and Law of the Case</u>

We begin by asking if the District Court has answered the question of our jurisdiction for us.  The legal doctrine that seems to be involved is "law of the case"--namely, that one court's decision over a legal question generally governs later stages of litigation in the same case.  <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 815-16 (1988); <u>Pollei v. Commissioner</u>, 94 T.C. 595, 601 (1990).  Law of the case promotes finality and efficiency by treating an issue as settled once it's been decided.  <u>Christianson</u>, 486 U.S. at 816.  We frankly acknowledge, however, that law-of-the-case doctrine may not be the right source of law here, because courts generally apply the doctrine where there's a single case being swatted from one court to the next.  But the District Court here did not transfer the entire lien-enforcement case to us; it just sent us the question of whether Pollock deserves innocent-spouse relief.  Still, if we ultimately resolve the innocent-spouse issue in Pollock's favor, her lien case would go away.  This makes us tentatively think that transfer of the innocent-spouse issue is sufficiently similar to other case transfers discussed in this corner of the law to at least consider the doctrine here.

Courts also commonly apply law of the case vertically--between inferior and superior courts where obedience and not deference has to be the rule.  <u>Id.</u>; <u>Covell v. Heyman</u>, 111 U.S.

176, 182 (1884).  But law of the case also constrains courts at the same level--"coordinate courts" as the caselaw calls them:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice * * *."

Christianson, 486 U.S. at 817 (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)).  Law of the case in this situation is a guide to exercising discretion, not a limit on a court's power--making it something of an "amorphous concept."  Arizona, 460 U.S. at 618.

The Eleventh Circuit, which would be the venue for an appeal in this case, described law-of-the-case doctrine--and in a context more like ours, between two coordinate courts--in Jenkins Brick Co. v. Bremer, 321 F.3d 1366 (11th Cir. 2003).  A District Court in Alabama had transferred a case to a District Court in Georgia.  The choice to transfer, rather than dismiss, the case meant that Alabama law would still govern the outcome--and the parties were convinced that Alabama's and Georgia's law differed in decisive ways.  The Eleventh Circuit recognized and applied the law-of-the-case rule established for coordinate courts in Christianson, 486 U.S. at 817.  It clarified the phrase "clearly erroneous" and outlined the standard of deference given to a coordinate court:

> Courts must rarely invoke the "clear error" exception, lest the exception swallow the rule. With this principle in mind, the exception can be restated this way: in a close case, a court must defer to the legal conclusion of a coordinate court in the same case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling.

Jenkins Brick, 321 F.3d at 1370-71.

Jenkins Brick also briefly explained that "manifest injustice" existed because applying Alabama law would violate Georgia's public policy. Id. at 1371. We likewise hold that expanding our jurisdiction beyond the bounds set by Congress would violate federally established public policy. We thus turn to the delicate question of whether the District Court's conclusion that the facts of Pollock's case justify an equitable tolling of the usual 90-day limit is a "close case" or a "clear error."

II. Section 6015's 90-Day Limit: Jurisdictional or a Statute of Limitations?

The Commissioner argues that no court has the power to equitably toll the 90-day limit. He contends that when Congress expanded our jurisdiction to include nondeficiency stand-alone cases, it did not specifically provide for equitable tolling of the existing 90-day limit for potential petitioners like Pollock. And he says that the 90-day limit is jurisdictional--not a statute of limitations--so we can't extend it even if we wanted to.

Pollock contends that section 6015 invokes equity on its face and should therefore allow for equitable tolling. She also argues that equitable tolling is especially appropriate in her case, given the very peculiar situation she faced. This last argument we can quickly reject--the possibility of equitable tolling isn't dependent on the underlying facts of a particular case, but rather on whether the language of a particular time limit can be extended as a matter of law. See John R. Sand & Gravel Co. v. United States, 552 U.S. __, __, 128 S. Ct. 750, 753-54 (2008); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

This gets us directly to the Commissioner's most compelling point--that the District Court misconstrued section 6015's 90-day deadline to be a statute of limitations rather than a jurisdictional requirement. This distinction is crucial: A statute of limitations simply prescribes a period in which a court may enforce certain rights. Young v. United States, 535 U.S. 43, 47 (2002). Courts may equitably toll them unless it would be inconsistent with the particular terms of the relevant statute. Id. at 49; John R. Sand & Gravel Co., 128 S. Ct. at 753. They "protect a defendant's case-specific interest in timeliness," John R. Sand & Gravel Co., 128 S. Ct. at 753, and courts may be able to look past delay because a limitations period is, like other affirmative defenses, subject to exceptions

such as waiver, estoppel--or equitable tolling, <u>Zipes</u>, 455 U.S. at 393; <u>In re Int'l Admin. Servs., Inc.</u>, 408 F.3d 689, 701 (11th Cir. 2005).

But jurisdictional time limits have altogether different consequences. If a deadline is jurisdictional, a court may not use equitable tolling to extend it. <u>Cooley v. Dir., Office of Workers' Comp. Programs</u>, 895 F.2d 1301, 1303 (11th Cir. 1990) (citing <u>Shendock v. Dir., Office of Workers' Comp. Programs</u>, 893 F.2d 1458, 1466 (3d Cir. 1990)). And this is true even if the result is harsh: "The age-old rule that a court may not in any case, even in the interests of justice, extend its jurisdiction where none exists has always worked injustice in particular cases." <u>Christianson</u>, 486 U.S. at 818.[12] In a black-lung benefits case, for example, a court received a petition in Atlanta one day after the expiration of the limitations period-- even though it was mailed eight days earlier from Birmingham, Alabama. The Eleventh Circuit held that it could not grant relief despite the unusual delay in delivery because "[j]urisdictional limitations and the policies which they embody must be honored even in the face of apparent injustice or an administrative agency's obvious misapplication or violation of

---

[12] But it's possible that, in close cases, harshness in result itself may affect a court's inquiry into the statute's character. See <u>Albillo-De Leon v. Gonzales</u>, 410 F.3d 1090, 1096 (9th Cir. 2005).

substantive law."  Brown v. Dir., Office of Workers' Comp.
Programs, 864 F.2d 120, 124 (11th Cir. 1989).  In United States
v. Brockamp, 519 U.S. 347 (1997), the Supreme Court similarly
held that, although a taxpayer's mental disability might be a
valid reason for equitable tolling, the Court could not equitably
toll section 6511's deadline for filing a refund claim because it
contained no "implied equitable tolling" exception.  Id. at 348-
49, 354.[13]  In other cases, courts have held that mistakes made
by a *pro se* litigant or an agency's miscommunications about the
proper appeals process cannot justify equitable tolling of a
jurisdictional deadline.[14]

    We distinguish statutes of limitations from jurisdictional
deadlines by applying the normal rules of construction.  We start
with the words of the statute and their context.  See Pugh v.
Brook (In re Pugh), 158 F.3d 530, 534 (11th Cir. 1998).  We look
past plain meaning to determine congressional intent only if the

---

[13] Congress later amended section 6511 to add subsection
(h), which allows equitable tolling in certain circumstances when
the taxpayer is disabled.  IRS Restructuring and Reform Act of
1998, Pub. L. 105-206, sec. 3202(a), 112 Stat. 740.

[14] See, e.g., Cooley v. Dir., Office of Workers' Comp.
Programs, 895 F.2d 1301 (11th Cir. 1990) (relief denied where
appeal timely mailed but sent to wrong office); Shendock, 893
F.2d 1458 (3d Cir. 1990) (no relief for *pro se* litigant who filed
appeal with wrong office on attorney's advice); Pomper v.
Thompson, 836 F.2d 131 (3d Cir. 1987) (relief denied where
petitioner filed within time instructed by agency but later than
the law allowed).

language is ambiguous, applying the plain meaning would lead to an absurd result, or (maybe) where there is clear evidence of contrary legislative intent.  In re Int'l Admin. Servs., Inc., 408 F.3d at 707.

We begin with the Code:

SEC. 6015(e).  Petition for Review by Tax Court.--

(1) In general.--In the case of * * * an individual who requests equitable relief under subsection (f)--

(A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (*and the Tax Court shall have jurisdiction*) to determine the appropriate relief available to the individual under this section if such petition is filed--

(i) at any time after the earlier of–

(I) the date the Secretary mails, by certified or registered mail to the taxpayer's last known address, notice of the Secretary's final determination of relief available to the individual, or

*       *       *       *       *       *       *

(ii) not later than the close of the 90th day after the date described in clause (i)(I).  [Emphasis added.]

The most important point to notice is that the Code here actually uses the word "jurisdiction"--giving us "jurisdiction" if someone files her petition within the 90-day time limit. Statutes granting a court "jurisdiction" if a case is filed by a

stated deadline look more like jurisdictional time limits.
*Zipes*, 455 U.S. at 393-94.

We ourselves have already analyzed a very similar question about section 6330's 30-day deadline for filing petitions to challenge the Commissioner's determinations on how to collect unpaid taxes. In *Boyd v. Commissioner*, 124 T.C. 296, 303 (2005), affd. 451 F.3d 8 (1st Cir. 2006), we affirmed our decision in *Jones v. Commissioner*, T.C. Memo. 2003-29, holding that section 6330(d)(1) is a jurisdictional deadline that can't be extended. And that section has language quite similar to section 6015(e)(1)(A)'s:

> SEC. 6330(d). Proceeding After Hearing.--
>
> (1) Judicial review of determination.--The person may, within 30 days of a determination under this section, appeal such determination to the Tax Court (*and the Tax Court shall have jurisdiction* with respect to such matter). [Emphasis added.]

Courts also commonly distinguish statutes of limitation from jurisdictional deadlines by the complexity of a statute's language. *Brockamp*, 519 U.S. at 350-51. Finding that section 6511--a statute that on its face doesn't contain the word "jurisdiction" or other jurisdictional terms--did not allow for equitable tolling, the Supreme Court stated that

> [o]rdinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied "equitable tolling" exception. * * * But § 6511 uses language that is not simple. It sets forth its limitations in a highly detailed

technical manner, that, linguistically speaking, cannot
easily be read as containing implicit exceptions * * *.

Id. at 350 (citation omitted).  The Court also pointed out that

section 6511 "sets forth explicit exceptions to its basic time

limits," a list which doesn't include equitable tolling.  Id. at

351.  The presence of such detailed statutory rules is a sign

that "Congress did not intend courts to read other unmentioned,

open-ended, 'equitable' exceptions into the statute that it

wrote."  Id. at 352.

Statutes of limitation, on the other hand, have no such

jurisdictional identifiers, and courts construe them with a

presumption that they were written against a backdrop of legal

default rules and doctrines that they can legitimately apply when

the statute is silent and the facts of a particular case warrant

it.[15]  And one of these default rules, as the Supreme Court

recently clarified, is a rebuttable presumption in favor of

equitable tolling's availability in suits brought by a private

---

[15] See Young, 535 U.S. at 49-50, 52 (holding that an express
equitable tolling provision is not needed for the doctrine's
availability in a bankruptcy statute); Albillo-De Leon, 410 F.3d
at 1098 ("the absence of any language clearly proclaiming the
filing deadline as 'jurisdictional' suggests that the statute is
*not* jurisdictional but a statute of limitations"); cf. Doe v.
KPMG, LLP, 398 F.3d 686, 689 (5th Cir. 2005) ("Because Congress
prefers to provide explicit tolling exceptions to the limitations
periods contained in federal tax law, by implication, it does not
intend courts to invoke equitable tolling to alter the plain text
of the statutes at issue").

party against the Government.  John R. Sand & Gravel Co., 128 S. Ct. at 755-56.

For example, the Supreme Court has ruled that the limitations period--found at 42 U.S.C. sec. 405(g) -- for those appealing a denial of Social Security benefits is a statute of limitations and courts may use equitable tolling when appropriate.  Bowen v. City of New York, 476 U.S. 467, 480 (1986).  But the statute being construed there did not use any jurisdictional terms, explicitly provided discretion to the Commissioner of Social Security to extend the 60-day filing deadline, and lacked any other indication that Congress wouldn't want courts to apply equitable-tolling doctrine.  Id.; see Jackson v. Astrue, 506 F.3d 1349, 1353 (11th Cir. 2007).

We think that section 6015 is more like section 6511 or 6330 than the statute at issue in Bowen--as we've noted, section 6015 uses the word "jurisdiction" and it's part of a system of detailed rules on requests for relief and appeals from their denial.  There are also no explicit reservations of discretion to extend the deadline.  We conclude that this is not a "close case," and hold instead that section 6015(e)(1)(A)'s 90-day limit is jurisdictional and therefore doesn't allow for equitable tolling, even though such a result may be very harsh for Pollock. We need not comment on whether the underlying circumstances of Pollock's situation merit equitable tolling--"Tax law, after all,

is not normally characterized by case-specific exceptions reflecting individualized equities." Brockamp, 519 U.S. at 352.

III. Liberal Construction

Having decided that section 6015(e)'s time limit is jurisdictional makes Pollock's position even more difficult. But she correctly points out that, at the time her petition was due, she actually had no forum in which to bring her claim, meaning that the Commissioner is arguing not just that she failed to file a timely petition, but that she failed to file a timely petition in a court that at the time was without jurisdiction to hear her case. By the time Congress amended the Code to give us jurisdiction, her 90-day window had already closed.

This leads us to an important question--how flexible we can be in construing section 6015 to provide her with a forum for her case under these unusual circumstances?

"[W]e lack general equitable powers to expand our statutorily prescribed jurisdiction." Woods v. Commissioner, 92 T.C. 776, 785 (1989). And though we can apply equitable principles to decide a case over which we do have jurisdiction,[16] our inability to apply those principles to expand our jurisdiction to cases where we otherwise wouldn't have it is

---

[16] For example, we can apply equitable principles such as waiver, duty of consistency, estoppel, substantial compliance, abuse of discretion, laches, and the tax-benefit rule. Woods, 92 T.C. at 784-85.

really nothing more than a fancy way of saying we can't override statutory limits on our power. <u>Flight Attendants Against UAL Offset v. Commissioner</u>, 165 F.3d 572, 578 (7th Cir. 1999). We are similarly reticent in our refusal to create deductions, credits, or exclusions out of a desire for a fairer outcome--we understand that this would be legislation, and legislation belongs exclusively to Congress. <u>Paxman v. Commissioner</u>, 50 T.C. 567, 576-77 (1968), affd. 414 F.2d 265 (10th Cir. 1969); <u>Farmer v. Commissioner</u>, T.C. Memo. 1994-342.

We have nevertheless decided cases involving the limitations period found in section 6213(a) (establishing our deficiency jurisdiction) that, at first glance, may seem to speak to the issues in this case--choosing to give the language of that section a "broad, practical construction rather than a narrow, technical meaning." <u>Lewy v. Commissioner</u>, 68 T.C. 779, 781 (1977). "Where the statute is capable of two interpretations, we are inclined to adopt a construction which will permit us to retain jurisdiction without doing violence to the statutory language." <u>Id.</u>; see also <u>Loyd v. Commissioner</u>, T.C. Memo. 1984-172.

Section 6213(a) has two requirements that must be met: First, the IRS must issue a valid notice of deficiency, and second, the taxpayer must timely file a petition with our Court. <u>Frieling v. Commissioner</u>, 81 T.C. 42, 46 (1983). The

Commissioner's mailing of the notice of deficiency starts a 90-day (or 150-day, if the notice is addressed to a person outside the United States) period in which the taxpayer may petition our Court for redetermination. Sec. 6213(a). The IRS may send the notice to the taxpayer's last known address, and as long as it does, the notice is valid whether or not he receives it. Lifter v. Commissioner, 59 T.C. 818, 820-21 (1973). If the IRS uses the wrong address, the notice is still valid as long as the taxpayer receives it in time to file a timely petition. Pugsley v. Commissioner, 749 F.2d 691, 692-93 (11th Cir. 1985); Frieling, 81 T.C. at 53. This has led to a number of cases in which we have had to decide how long is enough time for a taxpayer to file with this Court.[17] But even this flexibility doesn't lead to the tolling Pollock seeks. Instead, the result of a decision in favor of the taxpayer in such a case is that the notice of deficiency itself is invalid.[18] See, e.g., Sicker v. Commissioner, 815 F.2d 1400, 1401 (11th Cir. 1987). But see Gaw

---

[17] See, e.g., Lindstrom v. Commissioner, T.C. Memo. 2007-243; Fileff v. Commissioner, T.C. Memo. 1990-452; Loftin v. Commissioner, T.C. Memo. 1986-322.

[18] Cf. Kuykendall v. Commissioner, 129 T.C. 77 (2007). Since the taxpayers received their notice of deficiency with only 12 days remaining before the jurisdictional time limit expired, we held that they could contest their underlying tax liability at their collection due process hearing because section 6330(c)(2)(B) contemplates actual receipt of the notice of deficiency by the taxpayer. See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

v. Commissioner, 45 F.3d 461, 468 (D.C. Cir. 1995) (failure to address notice to last known address tolls 90-day or 150-day period until actual receipt), revg. T.C. Memo. 1993-379.

Within this same line of cases, we have had to decide how strictly to apply the language of section 6213(e) allowing 150 days to file a petition "if the notice is addressed to a person outside the United States."  In Lewy, the taxpayer was a resident of France with an office and an apartment in New York City. Although the IRS sent the notice to his New York address, the taxpayer left for France the next day and didn't receive the notice until day 81.  We held that he was a "person outside the United States" and so had 150 days from the time of mailing to file with this Court--even though he was actually in the United States on the day the Commissioner mailed the notice of deficiency--because "petitioner's absence resulted as a natural and probable consequence in his delayed receipt of the notice." Lewy, 68 T.C. at 784.

We can find no such wiggle room in section 6015(e) as applied to this case.  Its language is clear and is not capable of more than one interpretation.  Pollock is right that the 2006 amendment of section 6015(f) gave us jurisdiction over claims arising from liability remaining unpaid as of the amendment's effective date.  But the Commissioner is correct that the unamended language of 6015(e) limits our new jurisdiction to

claims filed within 90 days of the IRS's issuing its notice of determination.

IV.  The Effect of the Effective Date

Pollock makes one more sally at the Commissioner's defenses. Congress's amendment to section 6015(e) was effective with respect to liability for taxes "arising or remaining unpaid on or after" December 20, 2006.  Pollock asks us whether Congress really intended to create a cause of action only to simultaneously foreclose the opportunity to sue for some of those potential litigants.  Could it really be that the 90-day limitations period in section 6015(e) became effective for her only after it had already expired?

We agree that the language of the amendment's effective date tells us that the statute has some retroactive reach.[19]  But how much?  There are other possible cases falling into the same jurisdictional gap as Pollock's claim--cases where the IRS issued a notice of determination but the taxpayer never petitioned the

---

[19] In Landgraf v. USI Film Prods., 511 U.S. 244, 274 (1994) (quoting Hallowell v. Commons, 239 U.S. 306, 308 (1916)), the Supreme Court noted:

> We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed. * * * Application of a new jurisdictional rule usually "takes away no substantive right but simply changes the tribunal that is to hear the case".  * * *

Court, cases that we dismissed for lack of jurisdiction after Billings but before the amendment (at least those where we didn't vacate our order of dismissal), or cases where we denied relief on the merits after Ewing I but before Billings. In all of these situations, it's conceivable that the requesting spouse's tax liability remained unpaid as of the TRHCA's effective date.

There is a reasonable amount of caselaw construing statutes that extinguish live claims. Looking to general principles of statute-of-limitations jurisprudence, the Third Circuit recently held that "where a shortened limitations period would bar pre-accrued claims, other circuits have provided claimants the shorter of: (1) the pre-shortened limitation period, commencing at the time the action accrued; or (2) the shortened limitation period, commencing from the date the statute became effective." Kolkevich v. Attorney General, 501 F.3d 323, 337 (3d Cir. 2007); see also Ruiz-Martinez v. Mukasey, 516 F.3d 102, 117 (2d Cir. 2008). So even if we were to hold that a grace period was appropriate, these cases suggest there would still be a limit of no more than 90 days after the amendment's enactment. Pollock didn't raise an innocent-spouse defense until May 2007.

And it's important for us to note that these cases arise from situations where a court undoubtedly had jurisdiction before Congress changed the law by imposing a new or shorter deadline. Texaco, Inc. v. Short, 454 U.S. 516, 529 (1982) (taking

property);  Ruiz-Martinez, 516 F.3d at 115 (*habeas corpus*);
Kolkevich, 501 F.3d at 335-36 (*habeas corpus*); Ross v. Artuz, 150
F.3d 97, 100 (2d Cir. 1998) (*habeas corpus*).

Pollock's case is different:  We had no jurisdiction to hear
section 6015(f) nondeficiency stand-alone cases before the
amendment, so the amendment to section 6015 was Congress creating
jurisdiction for nondeficiency stand-alone claims where there had
been none before.  It's within Congress's power to create a cause
of action but limit those who may petition their cause.  And we
think that's what happened here--although Pollock falls within
the large set of potential petitioners whose tax liability
remained unpaid, she falls outside the smaller subset of
potential petitioners whose tax liability remained unpaid and to
whom the Commissioner had either mailed a notice of determination
within the 90 days preceding the amendment or who had filed
undismissed petitions with us when we had no jurisdiction.  We
recognize this to be an odd result, but it follows from
Congress's failure to tinker with the 90-day deadline when it
amended the Code to give us jurisdiction.  Congress simply
provided people in Pollock's situation with no window of
opportunity to petition our Court and no grace period to do so.[20]

---

[20] Certainly Congress could have decided not to act at all,
thereby providing no forum under section 6015(e) for section
6015(f) relief.  See Graham v. Goodcell, 282 U.S. 409, 431-32
(1931) ("the broad discretion of the Congress in the exercise of
(continued...)

We therefore have no jurisdiction to hear her claim, and[21]

  <u>An order of dismissal for lack of jurisdiction will be entered</u>.

---

[20](...continued)
its constitutional power as to taxation * * * necessarily extends to the whole field of supervision and control of the processes of enforcement. * * * In its selection the Congress dealt with an appropriate class and was not bound to include others.").

[21] Perhaps not all hope is lost--the Commissioner conceded at oral argument, that if she filed a refund action in District Court after her home was seized and sold, Pollock could try to make her case that she is an innocent spouse.