T.C. Memo. 2009-197

UNITED STATES TAX COURT

VIRGINIA DIANA SYKES, a.k.a. VIRGINIA BRITT, Petitioner, AND
WILLIAM S. BRITT, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22920-06.                    Filed September 3, 2009.

<u>John A. Cocklereece, Jr.</u>, for petitioner.

<u>Ocie F. Murray, Jr.</u>, for intervenor.

<u>Edwina L. Jones</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Petitioner seeks review of respondent's final
determination that petitioner is not entitled to relief from

joint and several liability under section 6015(b),[1] (c), or (f) with respect to a deficiency in income tax of $40,761, an addition to tax under section 6651(a)(1) of $1,522, and a penalty under section 6662(a) of $8,152 for tax year 2003; and that petitioner is not entitled to relief from joint and several liability under section 6015(f) with respect to the tax liability reported for tax year 2003, but not paid in the amount of $10,276. Petitioner initially disputed the notice of deficiency for tax year 2003, but petitioner abandoned her disputes over the adjustments giving rise to the deficiency in income tax for 2003 prior to the date of trial.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Both petitioner and intervenor resided in North Carolina at the time the petition and the notice of intervention were filed.

---

[1]Section references are to the Internal Revenue Code of 1986 as amended and in effect at the time the petition was filed with this Court, and/or in effect for the year at issue. Rule references are to the Tax Court's Rules of Practice and Procedure.

Background

Petitioner and intervenor were married on August 3, 2002. The couple's marriage ended in divorce on February 9, 2006.[2] Prior to, and during the marriage, petitioner worked for intervenor in intervenor's law practice. Their business relationship predated the marriage by several years.

During the taxable year at issue, 2003, petitioner, who holds a bachelor of science degree in nursing, and a bachelor of arts degree in pre-law, was intervenor's office manager, a role she filled prior to marriage as well. Intervenor was engaged in the practice of law as a sole proprietor throughout all of the periods discussed. As office manager, petitioner kept the financial records for intervenor's law office, reviewed mail received, read invoices, and paid bills including advance cost expenses on clients' accounts. Petitioner kept all of the records for the law practice in 2003. She had signature authority on the business bank account during the tax year at issue. Prior to and during the marriage, intervenor and petitioner frequently discussed business and family financial matters. Through her position as office manager, and through these frequent conversations about finances, petitioner became aware of the law practice's financial difficulties, including the

_____

[2]Though the couple did not receive a divorce decree until February 9, 2006, petitioner and intervenor physically separated on November 18, 2004.

fact that checks drawn on the law practice's bank account in 2003 and 2004 were often returned as dishonored by the bank for failing to maintain sufficient funds. Law practice checks signed by petitioner were among those returned for insufficient funds. Petitioner made loans to the law office and to intervenor personally during 2003 and 2004 to cover the financial shortages.

In August 2002, shortly after marrying, petitioner and intervenor purchased a Cadillac Escalade to be used for the law practice. The automobile, a sport utility vehicle (SUV), was used primarily by petitioner in the performance of her duties as office manager, which included delivering outgoing mail to the post office and driving to and from the bank that held the law practice's account. The vehicle was titled in both petitioner's and intervenor's names. The monthly principal and interest payments for the purchase price of the vehicle were made from the law office account. Law practice checks for some of the Cadillac Escalade payments were signed by petitioner.

In 2003, petitioner and intervenor sold their interests in real property known as "Lots 6 and 7 of the Northwoods Subdivision, Section Three," (Lots 6 and 7) Robeson County, Lumberton, North Carolina. Their interests in the property were sold for gross proceeds of $90,000, with a cost basis of $59,500, resulting in a net capital gain of $30,500. Though the parcels of land were legally owned by intervenor and his brother, doing

business in the name of a partnership entity, Britt & Britt PLLC, petitioner was required to sign the deed of conveyance under North Carolina property law.[3]  The deed and closing statements are dated May 9, 2003.  Prior to sale, petitioner and intervenor discussed the original purchase price of the real estate, sale negotiations, and proposed prices for sale.

Petitioner knew that the proceeds from the sale of their interests in the property were deposited into the law practice bank account.  Payments from that account were made on a mortgage for a residence where both petitioner and intervenor lived, although the house was titled solely in petitioner's name, and purchased prior to marriage.[4]  Additionally, the proceeds, deposited in the law practice bank account which petitioner often reviewed, were used to make the monthly principal and interest payments on the Cadillac Escalade during 2003.

In 2003, petitioner filed a number of domestic violence complaints with the local police department.  Petitioner sought a restraining order against intervenor on the grounds of the

---

[3]Because the parcels of land were owned one-half by each brother, the above figures represent a half share of the sale proceeds.

[4]Intervenor testified that the house was purchased while intervenor was married to his first wife, and before petitioner and intervenor were married.  Intervenor further testified that the house was titled solely in petitioner's name because at the time of its purchase intervenor had not yet divorced his first wife.

domestic-violence-related incidents.  In August of 2003, a North Carolina State district court issued a mutual domestic violence protective order for both husband and wife.  However, petitioner and intervenor appeared to reconcile in October 2003, and petitioner's domestic violence complaint was voluntarily dismissed.

Petitioner and intervenor timely requested in April 2004 an extension of time to file their 2003 return.  Prior to requesting their extension, in April 2004, a Form 1099-S, Proceeds from Real Estate Transactions, was issued to intervenor and petitioner in the amount of $90,000 for tax year 2003.  The Form 1099-S reflected the couple's home address during a period of time when petitioner and intervenor were still living together.  Prior to the expiration of their extension to file, and in light of Tropical Storm Francis, the IRS extended the October 15, 2004, filing deadline to November 9, 2004.  Petitioner and intervenor made arrangements to meet with the tax return preparer the week following the November 9, 2004 deadline.

Petitioner was the sole party responsible for reviewing the documents to be presented to the tax return preparer for tax year 2003.  Petitioner even assisted the return preparer, Debra Jernigan, with the preparation of the joint income tax return for 2003.  In doing so, petitioner reviewed the expenses of the law

practice. During the preparation of the return, petitioner matched each bank check against each expense to be claimed.

In gathering business and personal records to take to the return preparer for tax year 2003, petitioner went through client ledger cards that listed expenses paid for each client. Petitioner classified business checks from intervenor's law practice into categories of expenses for use in preparation of petitioner's and intervenor's 2003 income tax return. Petitioner went over these classifications with the return preparer when the 2003 income tax return was being prepared. Additionally, after reading about the new tax law benefit for SUVs in the news, petitioner provided the return preparer the cost of the Cadillac Escalade as a 2003 deduction under section 179 even though petitioner and intervenor had purchased the SUV in August 2002 and placed it in service in that year. Although the real estate, Lots 6 and 7, was sold in 2003, a Schedule D, Capital Gains and Losses, reflecting the transaction was not included in the couple's 2003 return.

Petitioner and intervenor's 2003 joint Federal income tax return was untimely filed on November 15, 2004. The return reported the amount owed as $10,276. Petitioner knew at the time she signed the 2003 tax return that her husband owed a separate income tax liability for tax year 2001 in excess of $50,000. This liability was not satisfied until after the 2003 return was

filed, and the money used to satisfy the debt was provided by intervenor's family. Additionally, during the period in question, petitioner knew that intervenor was legally obligated to make periodic payments for child support and alimony from a prior marriage, and further knew that intervenor would make these payments before he would attempt to pay his tax debts. There is no evidence that petitioner signed the return under duress, nor is there any evidence of marital strife or violence contemporaneous with the preparation or signing of the 2003 tax return. The parties separated later in 2004, and obtained a divorce decree in February 2006.

On August 7, 2006, respondent mailed to petitioner and intervenor duplicate originals of a notice of deficiency for tax year 2003. In the notice of deficiency, respondent denied the claimed section 179 deduction for the Cadillac Escalade on the grounds that it should have been expensed in 2002, the year placed in service; denied deductions for law-practice-related business expenses that had been duplicated and claimed twice; adjusted the couple's income to reflect the receipt of a capital gain from the sale of Lots 6 and 7; and disallowed unsubstantiated advance costs claimed to have been paid on behalf of clients. The notice, in tallying the total amount of tax due for 2003, stated that the self-assessed amount of tax liability reported by petitioner and intervenor, but not paid in the amount

of $10,276, was currently due. The notice of deficiency imposed a penalty for failing to timely file an income tax return under section 6651(a)(1), and an accuracy-related penalty under section 6662(a).

The income tax liability and deficiency from which petitioner seeks relief for 2003 are attributable to items of intervenor, including his self-employment tax liability for 2003. Petitioner no longer disputes the adjustments giving rise to the deficiency in income tax for 2003. Petitioner instead seeks relief under section 6015 from joint and several liability for the amounts determined by respondent in the notice of deficiency as well as the self-assessed amount reported by petitioner on her 2003 income tax return. On July 10, 2006, petitioner timely submitted to respondent a request for relief from joint and several liability under section 6015 for tax year 2003. On November 8, 2006, the petition was filed with this Court. On November 15, 2006, respondent sent to petitioner a notice of final determination denying petitioner's request. According to the notice of determination, respondent denied petitioner relief from joint and several tax liability with respect to the understatement because respondent determined that petitioner had actual knowledge of the items giving rise to the deficiency in tax for 2003. Petitioner was denied relief from joint and several liability with respect to the underpayment in

tax for 2003 because respondent determined that petitioner knew at the time that she signed the return that intervenor had financial difficulties and would not be able to pay the tax liability shown on the return. Petitioner was denied equitable relief for both the understatement and the underpayment under section 6015(f) because respondent determined that petitioner actually knew of the items giving rise to the deficiency, knew that the unpaid tax liability shown on the return would not be paid, and failed to establish that she would suffer economic hardship if relief was not granted.

## OPINION

The Court must decide whether petitioner is entitled to relief under section 6015(b), (c), or (f).

## I. Jurisdiction

This case presents the Court with a unique jurisdictional question that, although never raised by either party, must be resolved. The Court must decide whether it has jurisdiction to hear petitioner's claim for relief from the tax reported on the joint return.

Section 6015(e) grants the Tax Court jurisdiction to determine the relief available to a spouse with respect to a joint return. Pursuant to section 6015(e), the Tax Court has jurisdiction to review a denial of section 6015 relief by the IRS. The Court also has jurisdiction, as part of its traditional

authority in deficiency cases, to review claims under section 6015 which are raised as an affirmative defense against income tax deficiencies and penalties determined in a notice of deficiency.  See Butler v. Commissioner, 114 T.C. 276, 287 (2000).  Under section 6015(e), the Tax Court shall have jurisdiction to determine the appropriate relief available to the requesting individual if any petition for innocent spouse relief is filed after the earlier of (1) the date the IRS mails to the taxpayer's last known address a final notice of determination denying relief, or (2) a date 6 months after the date the request for relief was filed with the IRS.  Sec. 6015(e)(1)(A)(i)(I) and (II).

Petitioner's tax liability before this Court is for a single tax year, 2003.  Part of the tax liability was determined by respondent, and part was reported by petitioner on her 2003 income tax return.[5]  On July 10, 2006, in response to the IRS examination of petitioner's 2003 tax year, petitioner timely submitted to respondent a request for relief under section 6015 for tax year 2003.  On August 7, 2006, respondent mailed to petitioner a notice of deficiency for 2003 which determined a deficiency of $40,761, an addition to tax of $1,522.80 under

---

[5]Though the reported amount was included in the notice of deficiency as currently due, this amount was not an item determined as understated and deficient by respondent.  This merely served as a reminder to petitioner and intervenor that the amount reported on the 2003 tax return was still unpaid.

section 6651(a)(1), and a penalty of $8,152 under section 6662(a). The tax liability of $10,276 reported on her 2003 income tax return is in large part unpaid.

Petitioner timely filed a petition for redetermination of the deficiency on November 8, 2006. The petition also sought section 6015 relief with respect to the tax reported on the 2003 return. Petitioner raises an affirmative defense to the notice of deficiency under section 6015(b), (c), and (f). Additionally, petitioner seeks relief from her reported and unpaid tax liability under section 6015(f). Under section 6213(a), this Court has jurisdiction to review petitioner's section 6015 claim as an affirmative defense to the notice of deficiency. The question remains, however, whether this Court has jurisdiction over the reported and unpaid tax liability since the petition was filed prematurely under section 6015(e).

On July 10, 2006, petitioner timely submitted to respondent a request for relief under section 6015 for tax year 2003. Petitioner filed a petition with this Court on November 8, 2006, seeking redetermination of the deficiency. Respondent did not mail to petitioner a notice of final determination denying her July 10, 2006, request until November 15, 2006. As discussed earlier, for the Court to have section 6015(e) jurisdiction over her claims, petitioner should have filed a petition for review of the notice of determination within 90 days of November 15, 2006.

See sec. 6015(e)(1)(A)(i)(I) and (ii).  However, petitioner filed her petition with this Court on November 8, 2006, 7 days before respondent mailed the notice of determination.  Under section 6015(e), the petition was filed prematurely.  Moreover, the proper time for filing has now long passed.  A trial on this matter was held, the issues were fully briefed by the parties' counsels, and respondent has not raised any defense regarding the Court's lack of jurisdiction over the matter.

Like sections 6511 and 6330, the requirements under section 6015(e) for petitioning the Tax Court are jurisdictional.  See Pollock v. Commissioner, 132 T.C. ___, ___ (2009) (slip op. at 14-15). The Tax Court is a court of limited jurisdiction, and thus can only hear cases for which jurisdiction has specifically been granted by Congress.  See sec. 7442; Kluger v. Commissioner, 83 T.C. 309, 314 (1984).  Because the petition in this matter was filed prematurely, the Court lacks jurisdiction.  See Adkison v. Commissioner, 129 T.C. 97 (2007) (holding that the Court lacked jurisdiction over a section 6015 claim that was prematurely filed).  Even though the petition was prematurely filed, petitioner could have rectified the error by petitioning this Court for relief from the reported and unpaid 2003 tax liability within 90 days of the mailing of the notice of final determination, and the Court would have then had jurisdiction to hear that matter.  This did not happen.  As a result, this Court

does not have jurisdiction to hear petitioner's claims for relief regarding her reported and unpaid tax liability for tax year 2003.  See Pollock v. Commissioner, supra at ___(slip op. at 23-24) (holding that the Court's jurisdictional time limit may not be equitably tolled under section 6015).

As a result, the Court will consider only petitioner's section 6015 defenses against the notice of deficiency, and not petitioner's equitable claims regarding the reported and unpaid amount as reported on her 2003 return.

II. Section 6015 and Relief From Joint and Several Tax Liability

Under section 6013(d)(3), a husband and wife filing a joint return are jointly and severally liable for all tax for the taxable year (not merely the amount shown on the return), including interest and penalties.  Petitioner claims she is entitled to relief from this liability under section 6015.  Section 6015 relieves a spouse of joint and several liability in three situations:  (1) if the spouse did not know or have reason to know of the deficiency when the return was signed, and satisfies other conditions; (2) if a divorced or separated spouse seeks to limit individual liability to the portion of the deficiency attributable to him or her; and (3) in the case of a deficiency or of a tax shown on a return but not paid, if it is inequitable to hold the spouse liable for the tax.  See sec. 6015(b), (c), and (f), respectively.  This last provision, found

in section 6015(f), only applies if relief is not available to the taxpayer under the other two provisions.

A. <u>Section 6015(b)</u>

Under section 6015(b), generally the spouse seeking relief from liability for an understatement of tax will be entitled to relief if he or she did not know or have reason to know of the understatement when the return was signed, and satisfies other conditions.[6]  Section 6015(b) states that if there is an understatement of tax on a jointly filed return attributable to erroneous items of one individual filing the joint return, and the other individual filing the joint return, in addition to meeting other conditions, establishes that in signing the return he or she either did not know, or have reason to know, that there was an understatement, then the other individual shall be relieved of liability for the payment of tax and penalties to the extent the liability is attributable to the understatement. Moreover, relief from joint and several liability under this subsection is not an all-or-nothing proposition.  An individual may be granted relief from all or any portion of the tax deficiency of which the individual had no actual or constructive knowledge.  See sec. 6015(b)(2).

---

[6]This is a conjunctive test, and therefore, all requirements of section 6015(b) must be satisfied to qualify a spouse for relief thereunder.

Except as otherwise provided in section 6015, the taxpayer bears the burden of proof. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). Therefore, for petitioner to qualify for section 6015(b) relief, she must prove to the Court that, inter alia, she did not know, or have reason to know, that there was an understatement of tax.

The items at issue giving rise to the understatement in this case are as follows: (1) disallowance of a deduction claimed under section 179 for a Cadillac Escalade which petitioner knew was purchased and placed in service in 2002; (2) disallowance of business expenses which were deducted twice; (3) disallowance of unsubstantiated advance costs claimed to have been paid on behalf of clients; and (4) an unreported capital gain from the sale of real property titled in the names of intervenor and his brother, which sale was facilitated by petitioner's signing the conveyance to release any marital interest she may have had in the property.

A spouse has reason to know of the understatement if a "reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the * * * understatement." Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989); see also sec. 1.6015-2(c), Income Tax Regs. Factors to consider in analyzing whether a spouse had reason to know of the understatement include: (1) the spouse's

level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. Price v. Commissioner, supra at 965.

Petitioner is educated, holding a bachelor of science degree in nursing and a bachelor of arts degree in pre-law. Prior to and during the tax year at issue, petitioner was the manager of intervenor's law practice. As part of her duties as manager, she reviewed mail received, read invoices, and paid bills including advance cost expenses on clients' accounts. Petitioner kept all of the records for the law practice in 2003. Petitioner was the sole party responsible for reviewing the documents to be presented to the tax return preparer for tax year 2003. In doing so, petitioner reviewed the expenses of the law practice. Petitioner even assisted the return preparer with the preparation of the joint income tax return for 2003. During the preparation of the return, petitioner matched each bank check against each expense to be claimed. Finally, intervenor was not deceptive about financial matters, and in fact frequently discussed with petitioner, then his wife, business and family financial matters.

Petitioner was responsible for the personal and law practice finances. She either knew or should have known, as the manager of the law practice who helped prepare the tax return for 2003, that business expenses were being twice deducted and that excessive deductions for advance client costs were being claimed. As part of preparing the return, petitioner should have informed the preparer that the Cadillac Escalade had been purchased and placed in service in 2002, and not in 2003. She had actual knowledge of those facts because she drove the vehicle during 2002 in the course of her duties as manager of the law practice, and because the vehicle was titled in her name; two matters which do not require any knowledge of tax law. Finally, petitioner knew or had reason to know of the unreported capital gain from the sale of Lots 6 and 7. The sale of this property was contingent upon petitioner's signing the deed of conveyance, which she did. Moreover, both petitioner and intervenor testified that they frequently discussed personal and business finances during the marriage. In fact, intervenor testified that petitioner and intervenor discussed the sale price negotiations for Lots 6 and 7 prior to the sale of the property. Intervenor discussed with petitioner that the lots were purchased for approximately $120,000, and that negotiations were then occurring

to sell the lots for approximately $180,000.[7]  Additionally, petitioner testified that she knew, prior to signing the 2003 income tax return, that the profit from the sale had been used to pay off debts of intervenor's law firm.  The sales proceeds received by intervenor from the sale were deposited into the law practice checking account, from which payments were made on the Cadillac Escalade during 2003, and on the mortgage on the couple's house, which was titled solely in petitioner's name. Further, a Form 1099-S was issued to intervenor and petitioner in the amount of $90,000 for 2003 in April 2004, while petitioner and intervenor were still living together.  The form was sent to the couple's home address, well before petitioner and intervenor filed their 2003 return.  While petitioner testified that she never received this document, in light of the fact that petitioner testified that she routinely reviewed personal and business documents sent to the couple, in conjunction with the fact that petitioner managed all business and personal finances, the Court finds petitioner's testimony to be self-serving and not credible.  Petitioner was familiar with the purchase price and proposed sale price of the properties.  Petitioner therefore should have known that there was some gain from the sale of the

---

[7]The parcels were owned equally by intervenor and his brother.  The property was sold for gross sales proceeds in the amount of $180,000, with intervenor's share as half owner equating to $90,000 in gross sales, with a cost basis of $59,500, resulting in a net capital gain of $30,500.

real estate. Even if petitioner were otherwise unaware of this fact, she would have known of the sales proceeds through her role as the law practice manager.

Thus, because petitioner knew or should have known of the understatement of tax, she does not qualify for relief under section 6015(b). The Court has considered all relevant evidence in making its determination.

B. Section 6015(c)

Under section 6015(c), a divorced or separated spouse may seek to limit liability for a deficiency on a joint return to the portion allocable to him or her. In this case, respondent concedes that certain prerequisites for relief have been met. However, respondent argues that petitioner is precluded from obtaining relief because under section 6015(c)(3)(C), apportionment of liability does not apply if the Commissioner "demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual * * *". This Court has defined actual knowledge as "an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)". Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), affd. 282 F.3d 326 (5th Cir. 2002), cert. denied 537 U.S. 881

(2002).  This actual knowledge requirement does not require the requesting spouse to possess knowledge of the tax consequences of the item giving rise to the deficiency.  Id. at 194.  When one spouse requests relief under section 6015(c), the burden of proving the spouse's actual knowledge of an item is on the Commissioner.  In the case of a disallowed deduction, the burden requires the Commissioner to prove that the spouse had "actual knowledge of the factual circumstances which made the item unallowable as a deduction."  King v. Commissioner, 116 T.C. 198, 204 (2001).  And, consistent with Cheshire, such actual knowledge does not include knowledge of the tax laws or knowledge of the legal consequences of the operative facts.

Generally, under section 6015(c), a taxpayer who, at the time of electing relief under that subsection, is no longer married, is legally separated, or has not resided with his or her spouse for a 12-month period, may obtain relief from joint and several liability for the portion of the income tax deficiency allocable to the other spouse, unless the Commissioner demonstrates that the electing spouse, as of the time the joint income tax return was signed, had actual knowledge of the item or items that gave rise to the deficiency.  It is clear to the Court that petitioner had actual knowledge of all items giving rise to the deficiency in joint tax; i.e., actual knowledge of the omitted income and of factual circumstances which made the

deductions unallowable. Petitioner was solely responsible for keeping the finances of the law practice; had actual knowledge of the year the Cadillac Escalade was purchased and placed in service; helped prepare the 2003 income tax return by reviewing items with the preparer and reviewing and gathering all financial documents from the law practice, including checks, expense reports, and business ledgers; frequently discussed business and personal financial matters with her then husband; discussed the sale negotiations for the real estate property; knew the amount of the proceeds of the sale and of intervenor's basis in the property; and accounted for the receipt of proceeds from said sale to make payments on intervenor's debts, on the house solely titled in her name, and on the Cadillac Escalade. Petitioner controlled the client billing process and was solely responsible for overseeing the day-to-day activities of intervenor's law practice. Consequently, relief in the form of apportionment under section 6015(c) is not available to petitioner. The Court has considered all relevant evidence in making its determination.

C. Section 6015(f)

Under section 6015(f), the Commissioner may grant equitable relief from joint and several liability if he finds that, taking into account all of the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency, and if relief is not available under section 6015(b)

or (c).  In cases brought under section 6015(f), the Court applies a de novo standard of review as well as a de novo scope of review.  See <u>Porter v. Commissioner</u>, 132 T.C. \_\_\_, \_\_\_ (2009) (slip op. at 11-12).  Petitioner bears the burden of proving that she is entitled to equitable relief under section 6015(f).  See Rule 142(a).  The Court has jurisdiction to determine whether a taxpayer is entitled to equitable relief under section 6015(f).[8] See sec. 6015(e)(1)(A).  The Court's determination is made in a trial de novo.  See <u>Porter v. Commissioner</u>, <u>supra</u> at \_\_\_ (slip op. at 11-12).  Therefore, the Court may consider evidence introduced at trial which was not included in the administrative record.  Both parties submitted evidence at trial which was not available to respondent's Appeals officer.  The Court has considered all relevant evidence in making its determination.

Under section 6015(f), relief shall be granted under procedures prescribed by the Secretary.  These procedures have been described in Rev. Proc. 2003-61, 2003-2 C.B. 296.  Under section 6015(e) and (f)(1), the Court will consider all relevant facts and circumstances in determining whether petitioner is entitled to relief.  As explained by Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, the requesting spouse must satisfy

---

[8]As previously discussed, the Court has jurisdiction to review petitioner's claim under section 6015(f) as an affirmative defense to the deficiency, but not to the reported and unpaid tax liability.

all of the following threshold conditions to be eligible for relief under section 6015(f): the requesting spouse must have filed a joint return for the taxable years for which relief is sought; the requested relief must not have been available to the requesting spouse under section 6015(b) or (c); no assets can have been transferred between the spouses as part of a fraudulent scheme by the spouses to hide income or avoid tax; the nonrequesting spouse must not have transferred disqualified assets to the requesting spouse; the requesting spouse did not file or fail to file the return with fraudulent intent; and the income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return. Respondent concedes, and the Court agrees, that petitioner satisfies these threshold requirements for equitable relief. However, respondent argues that as described under the revenue procedure, petitioner is not entitled to relief under section 6015(f) because petitioner had knowledge of the items giving rise to the deficiency; had knowledge or reason to know that intervenor would not or could not pay the tax liability shown on the return; and if held liable for the payment of tax she would not suffer an economic hardship. See Rev. Proc. 2003-61, sec. 4.02(1) and 4.03, 2003-2 C.B. at 298.

Petitioner completed and submitted Form 12510, Questionnaire for the Requesting Spouse, and reported that she knew petitioner's and intervenor's joint monthly expenses were in excess of their monthly income for the 2003 tax year. Petitioner was aware that checks drawn on the law practice account were often returned for insufficient funds in 2003 and 2004. Petitioner made loans to the law office and to intervenor personally during 2003 and 2004. Moreover, petitioner knew at the time she signed the 2003 tax return that intervenor owed a separate income tax liability for tax year 2001 in excess of $50,000. This liability was not satisfied until after the 2003 return was filed, and the money used to satisfy the debt was provided by intervenor's family. This information supports the conclusion that petitioner knew that she and intervenor were having financial difficulties during tax year 2003 and therefore intervenor would not or could not pay the tax liabilities shown on the return. Additionally, during the period in question, petitioner knew that intervenor was legally obligated to make periodic payments for child support and alimony from a prior marriage, and further knew that intervenor would make these payments before he would attempt to pay his tax debts.

As evidenced by Form 12510, petitioner revealed that at the time of completing the form, her monthly income was $3,000 and her monthly expenses were $2,180, leaving petitioner with a

monthly surplus of $820.  Ex. 27-J, p. 26.  Under Rev. Proc. 2003-61, sec. 4.02(1) and 4.03(2)(a)(ii), the Court must consider whether holding petitioner liable for the tax would create an economic hardship for her.  Economic hardship is defined as the inability to meet "reasonable basic living expenses."  See sec. 301.6343-1(b)(4), Proced. & Admin. Regs.  Because petitioner reported that she has a surplus of $820 after payment of her expenses each month, the Court finds that petitioner has the ability to meet "reasonable basic living expenses," and that denying petitioner relief under section 6015(f) does not create an economic hardship for her.

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299, in weighing eligibility for relief under section 6015(f), it is considered a negative factor if the requesting spouse received a significant benefit (beyond normal support) from the unpaid income tax liability or item giving rise to the deficiency. Petitioner used profits from the sale of Lots 6 and 7 to make monthly mortgage payments on the house that intervenor purchased for petitioner prior to their marriage, which was titled solely in petitioner's name.  The Court finds this to have been a significant benefit to petitioner.

In sum, the Court determines that petitioner is not entitled to relief under section 6015(f).

## Conclusion

Because petitioner had actual knowledge of the items that created the deficiency, she is not entitled to relief from joint and several liability for the deficiency under section 6015(b) or (c).  Further, because petitioner possessed this knowledge, because she knew or had reason to know at the time of filing the return that intervenor would not pay the tax, because petitioner has not shown that she would suffer economic hardship if required to pay in full the liability from which she seeks relief, and because she received a significant benefit from the unreported income giving rise to the deficiency, petitioner is not entitled to equitable relief from joint and several liability under section 6015(f).  Petitioner's claims regarding the unpaid tax liability reported on her 2003 joint income tax return are dismissed for lack of jurisdiction.

The Court has considered the remaining arguments of all parties for results contrary to those expressed herein and, to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.