In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3380

ROBERT J. GESSERT and THE GESSERT GROUP,

*Plaintiffs-Appellants,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06-C-448—**Lynn Adelman**, *Judge.*

ARGUED DECEMBER 6, 2012—DECIDED JANUARY 3, 2013

Before EASTERBROOK, *Chief Judge*, and FLAUM, and ROVNER, *Circuit Judges*.

FLAUM, *Circuit Judge*. The Gessert Group ("the Group"), a pharmaceutical consulting group, obstinately refused to pay its taxes. By 2005, it accumulated over $1 million in unpaid liabilities. Revenue Officer Lillie Johnson pursued collection efforts on behalf of the United States. She levied two of the Group's accounts and also sought to recover the taxes withheld from the Group's

employees—so-called trust fund taxes—from Robert Gessert personally. Gessert was the Group's creator, sole shareholder, and CEO, and presumably behind the Group's refusal to pay. The Group and Gessert filed suit against the United States seeking refunds and abatements. It also pursued damages under I.R.C. § 7433, which permits recovery for improper collection efforts. The plaintiffs principally allege that the Group directed Johnson to apply a handful of voluntary payments towards its trust fund liability, but Johnson applied the payments to the non-trust fund portion. This increased Gessert's personal liability. The parties also allege that Johnson violated a series of Internal Revenue Code ("Code") and Treasury provisions and that she improperly levied the Group's accounts.

However, Gessert lacks standing under I.R.C. § 7433 because Johnson sought collection from the Group, not Gessert. Further, the Group failed to allege economic harm, which is also prerequisite to standing under I.R.C. § 7433. With respect to the refund claim, the district court properly concluded the Group filed its administrative claim too late. Finally, Gessert's refund-and-abatement claim fails because the Group did not provide specific written direction to the IRS effectuating a directed payment. We therefore affirm the district court's decision.

## I. Background

### A. Statutory Background

The Internal Revenue Code requires employers to withhold employees' income tax and Social Security contribu-

tion from each employee's paycheck. I.R.C. §§ 3402(a), 3102(a). Employers hold these taxes in trust for the federal government, I.R.C. § 7501(a), and they are commonly called "trust fund taxes." Individuals responsible for collecting trust fund taxes that willfully fail to collect, pay over, or account for trust fund taxes can be assessed a "trust fund recovery penalty" equal to the tax evaded. I.R.C. § 6672(a). The trust fund recovery penalty liability is separate and distinct from the firm's liability—i.e., the responsible person cannot recover from the firm and the IRS can recover from the person individually. *Kuznitsky v. United States*, 17 F.3d 1029, 1032 (7th Cir. 1994) (citing cases).

## B.  Factual Background

Robert Gessert created the Group in 1989 and served as its sole shareholder, president, and CEO until it ceased operations in 2004. Vytautus Jonynas served as CFO. From the third quarter of 2000 through 2004, the company did not make timely employment tax deposits and payments, failing to pay nearly all of its $1.4 million tax liability. It also failed to file its employment tax returns between January 2002 and April 2004 (although the returns were eventually filed in 2004 and 2005).

The IRS assigned Revenue Officer Johnson to collect the Group's taxes. Johnson initially tried to satisfy the Group's liabilities through voluntary payments and an installment agreement, but this proved futile when the Group defaulted on the installment agreement. The Group did make some voluntary payments. It made four electronic payments totaling $66,000 followed by two checks

totaling $100,000. These payments were not accompanied by written instructions directing the IRS to apply these payments to a specific obligation. Thus, the IRS applied them to the Group's non-trust fund obligations consistent with IRS procedures. These payments fell considerably short of meeting the Group's liability.

The Group also alleges that it voluntarily issued a $75,000 check a few days after the IRS levied its bank account and collected $114,000. The IRS's records indicate the check was received three months after the levy. When the IRS submitted the check, it was dishonored. The Group alleges that it received a $1,500 overdraft fee as a result.

In addition to the bank account, the IRS also issued levies to DePuy Orthopedics, Inc. ("DePuy") and Pfizer, Inc., both of which owed the Group payments for services. The two companies respectively remitted $121,292.50 and $96,744 to the IRS. Because these payments were involuntary, the IRS applied them to the non-trust fund portion of the Group's liabilities. With payments still outstanding, the IRS assessed trust fund recovery penalties against Gessert personally. These penalties totaled $696,832.57—the unpaid portion of the Group's trust fund liabilities. At the commencement of this suit, Gessert still owed $350,000 plus penalties and additions, while the Group owed over $1 million on its employment taxes.

## C.  Procedural Background

In 2005, Gessert and the Group filed administrative claims for damages. After the IRS did not respond, both Gessert and the Group filed separate claims under two separate statutes.

### 1.  Motion to Dismiss—Section 7433 Claims

First, Gessert and the Group sought damages under I.R.C. § 7433 for purportedly improper collection actions taken by the government. Both parties alleged that Johnson refused to follow Jonynas's verbal instruction and misapplied voluntary payments to the non-trust fund portion of the Group's liability. As a result, Gessert's personal liability under the trust fund recovery penalty remained the same after the payments. They also alleged that the IRS wrongfully levied funds from DePuy and Pfizer. They argued that the money owed by DePuy and Pfizer to the Group was not due, meaning the IRS lacked authority to levy the accounts. Finally, the parties alleged general "misconduct" surrounding the collection process and various violations of Code provisions and a Treasury Regulation.

The district court dismissed all of Gessert's claims under this section. It held that the statute only authorizes suit by the taxpayer who is subject to the improper collection activities. Because the taxpayer was the corporation instead of Gessert, he lacked standing. The IRS had never taken any collection activities against Gessert personally, even though he owed a substantial sum under the trust fund recovery penalty.

The district court also dismissed the Group's damages claims regarding its allegation that the Government applied the Group's voluntary payments to the wrong obligation. The Group could not meet section 7433's requirement that the wrongful activity result in actual economic damages because the application lowered the Group's tax liability by the same amount either way. The Group moved for reconsideration, arguing that the $1,500 insufficient funds charge was pecuniary harm. The district court dismissed this motion because the fee occurred beyond the two-year statute of limitations period.

### 2. Summary Judgment—Remaining Section 7433 Claims and Refund Claims

After the motion to dismiss, the only remaining claims were that the Government lacked authorization to levy the DePuy and Pfizer accounts and that Johnson had violated the Code and Regulation. The district court entered summary judgment in the Government's favor on these claims. It found the Group could not challenge the levies under section 7433. Instead, section 7426 was the mechanism Congress established to challenge improper levies and that section limits standing to the subject of the levy, not the taxpayer. Notwithstanding, it held that the levies were proper because no reasonable factfinder would conclude that they were advances instead of payment due to the Group. It also concluded the arguments that Johnson violated the various Code provisions were "baseless." The district

court found the refund claims time barred under I.R.C. §§ 6511, 7422. It then entered judgment against Gessert for $445,041.87 and the Group for $1,343,621.67.

## II. Discussion

We review both motions to dismiss and entries of summary judgment de novo. For motions to dismiss we accept all well-pled facts as true and construe all inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In reviewing the motions for summary judgment, we grant the motion if, taking the evidence in the light most favorable to Gessert, there is no issue of material fact and the United States is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

### A. Section 7433 Claims

#### 1. Gessert's Claims

As sovereign, the Government may not be sued without its consent. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Waivers are not implied and are construed narrowly against the plaintiff. *Soriano v. United States*, 352 U.S. 270, 276 (1957) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."). Section 7433 of the Internal Revenue Code is such a waiver. It

provides "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any [employee] of the Internal Revenue Service . . . disregards [the Code] or any [IRS] regulation . . ., such taxpayer may bring a civil action for damages against the United States." I.R.C. § 7433. In other words, plaintiffs may sue IRS employees that subjected them to improper collection efforts. However, the plain language limits relief to "such taxpayer[s]" that were subjected to the wrongful activity; the Code does not permit recovery by third parties harmed by the activity. *See Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1003 (9th Cir. 1999) (two limited partners could not sue for alleged wrongful acts during collection from partnership).

Gessert only alleges that the IRS and Johnson engaged in wrongful activity in its collection efforts towards the Group. The record does not reflect that the IRS had ever initiated collection efforts towards Gessert personally. As such, Gessert is not "such [a] taxpayer" under section 7433, and the Government has not consented to suit by him. Therefore, the district court properly dismissed all of his claims under section 7433.

Gessert argues that because he was assessed trust fund recovery penalties during the time Johnson engaged in the allegedly improper collections, he was a "taxpayer" under the statute. He further points out that "both [he] and the Group were directly impacted by Johnson's failure to honor the designation of payment." Even though Gessert was a taxpayer under the Code, *see* I.R.C. § 7701(a)(14) ("The term 'taxpayer' means any persons

subject to any internal revenue tax."), he was not "such taxpayer" under section 7433. "Such" limits the broader term "taxpayer" to include only those taxpayers subjected to the improper collection activities. Because the IRS never sought to collect Gessert's recovery penalty, he is not "such [a] taxpayer." Gessert's reading would transform the statute from "such taxpayer" to "any taxpayer affected by the allegedly improper conduct." The statute does not read as broadly as Gessert suggests. Thus, we affirm the district court's dismissal of Gessert's section 7433 claims.

### 2. The Group's Claim Regarding Misapplication of the Voluntary Payments

The Group appeals the district court's dismissal of its section 7433 claim that Johnson applied the voluntary payments to the wrong obligation. Section 7433 permits civil damages for certain unauthorized collection actions, but limits damages to the "sum of—actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and the costs of the action." I.R.C. § 7433(b)(1)-(2). The district court dismissed this claim because the group did not suffer any economic harm—it owed both non-trust fund and trust fund taxes, so the application to either liability lowered its overall liability by the same amount.

We agree with the district court—the Group must allege actual economic damage to state a claim under section 7433. Otherwise, moneyed plaintiffs could

frustrate collection efforts by filing suits for claims where they suffered no harm. This result would be inconsistent with Congress's limited remedy and the principle requiring us to strictly construe waivers of sovereign immunity against the plaintiff. *See Soriano*, 352 U.S. at 276. Further, the statute does not permit nominal damages, *see* I.R.C. § 7433(b)(1)-(2), and the declaratory judgment act expressly prohibits declaratory judgments in tax cases. 28 U.S.C. § 2201.

The Group relies exclusively on *In re Kaplan* to overcome this statutory interpretation. 104 F.3d 589 (3d Cir. 1997). However, *Kaplan* concerned the power of bankruptcy courts to compel the IRS to allocate tax payments of a corporation not before the bankruptcy petition. *Id. Kaplan* had nothing to do with section 7433, under which the Group currently proceeds. The reasoning of the Third Circuit therefore does not require a contrary finding. We affirm the district court's dismissal of the Group's section 7433 claim that Johnson applied the voluntary payments to the wrong fund.

### 3.   The Group's Claims Regarding the Levies

The Group next claims that the levies against Pfizer and DuPuy were improper. The IRS may levy a delinquent taxpayer's property. I.R.C. § 6331. But the IRS may only levy "property possessed" by the taxpayer or existing obligations, which exist "when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date." I.R.C. § 6331(b); Treas. Reg. § 301.6331-1(a)(1). The Group

argues that these obligations were advances, and therefore that the Group's right to them was not "fixed and determinable." *See* Treas. Reg. § 301.6331-1(a)(1). Accordingly, the Group claims that the accounts could not be levied by the IRS.

However, these arguments are unavailing because they too do not allege any economic harm and therefore the group lacks standing. Under the Group's theory, the DePuy and Pfizer accounts were not yet owed to it. Accordingly, *Depuy and Pfizer*—not the Group—would have suffered economic harm as a result of the allegedly improper levy. In fact, assuming arguendo that the levied-upon funds still belonged to DePuy and Pfizer, the Group would have realized a windfall in having Depuy and Pfizer's property applied to its own liabilities. *See Allied/Royal Parking*, 166 F.3d at 1004-05; *Maisano v. Welcher*, 940 F.2d 499, 501 (9th Cir. 1991) ("If the [property] belongs to the [third party], the [taxpayers] have no standing to sue and their case must be dismissed.").

In addition, Congress provides a remedy for third parties to collect wrongfully levied property but expressly forbids the taxpayer against whom the IRS is seeking to collect the taxes from doing so. I.R.C. § 7426(a) permits "any person (other than the person against whom is assessed the tax out of which such levy arose)" whose property has been levied or sold pursuant to a levy, to sue to recover the property. The Group is "the person [that was] assessed the tax out of which such levy arose." Thus, the government did not waive sovereign immunity to challenge the levies.

### 4. The Group's remaining Section 7433 claims concerning Johnson's behavior

Next, the Group argues that Johnson violated various provisions of the Code and a regulation, permitting recovery under section 7433. Again, the Group offers no economic damages, so it has no standing to sue. Regardless, the claims lack merit.

### i. Section 6304(b)

Section 6304(b) states an officer may not "harass, oppress, or abuse any person in connection with the collection of any unpaid tax" including "the use of obscene or profane language." I.R.C. § 6304(b), (b)(2). The Group cites a number of minor incidents which it argues violate the statute. For example, it argues that Johnson did not explain to Jonynas what a levy was, that she "threatened to take action" when Jonynas tried to interfere with IRS's levy against the Pfizer funds, and became upset when Jonynas discovered he could designate payments. Most of the allegations take the form of the Group labeling Johnson's behavior as "abrupt," "threatening," "erratic," and "aggressive." These conclusory allegations devoid of factual support do not preclude summary judgment. *See Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). Indeed, in light of the Group's refusal to pay over $1 million it owed the government, including over $300,000 it withheld from its employees but did not turn over to the government, it is unremarkable that Johnson persistently tried to assess a trust fund recovery penalty against Jonynas for his role in the

debacle. Further, to the extent that Johnson was wrong in doing so, the IRS Appeals Office ultimately removed the penalty against Jonynas. Thus, Jonynas's rights were vindicated.

Finally, the Group argues Johnson "repeatedly" called DePuy about the levied funds. However, its record citations cite just a handful of unremarkable calls to both Pfizer and DePuy inquiring about the levies. Indeed, the testimony of DePuy and Pfizer employees directly conflicted with these allegations, describing Johnson as professional. This claim does not justify reversal.

### ii.  Section 7206(4)

Next, the Group argues Johnson violated section 7206(4), which makes it a felony for any individual that "[r]emoves, deposits, or conceals . . . with intent to evade or defeat the assessment or collection of any tax." This provision is directed at taxpayers that try to defeat tax claims. *See, e.g.*, *United States v. McClain*, 934 F.2d 822, 824 (7th Cir. 1991); *United States v. Hook*, 781 F.2d 1166, 1170 (6th Cir. 1986). It is not a rule governing the conduct of IRS employees and therefore cannot form the basis of recovery under section 7433. Moreover, any remedy for damages (e.g., the $1,500 fee assessed for insufficient funds) was barred by the statute of limitations.

### iii.  Section 7214

Section 7214 penalizes officers or employees that are "guilty of extortion or willful oppression" or "knowingly

demand[] . . . greater sums than are authorized by law."
I.R.C. § 7214(a)(1)-(2). The Group principally argues
that Johnson tried to "strong arm" a sum greater than
what she could legally levy from DePuy. In support, the
Group cites Depuy employee Monte Moore's testimony
that "after [Johnson] received the $121,000 check [for the
levy], she called [Moore], acknowledged having received
the check, and then asked about something along the lines
of, 'Now, when will I get the rest of the money.'" The
Group had a $300,000 contract with DePuy of which
approximately $121,000 was due. As noted above, the IRS
can only levy money due. Moore testified that when
Johnson called after receiving the first $121,000, he "told
her that [he] wasn't sure exactly what she was referring
to" and explained that the "$200,000 wasn't due and
payable" under the terms of the levy. The Group does
not assert that Johnson pursued this $200,000 after
learning it was not due. Thus, this conduct does not
meet section 7214's requirement that the revenue
officer "knowingly" demand or extort the property.

The Group makes a few more accusations. It argues
Johnson violated the section by threatening to seize
Gessert's house. However, Gessert owes the IRS over
$400,000 that he refuses to pay. The Code permits
Johnson to seize the house. I.R.C. §§ 6331, 7403. The
Group next asserts Johnson "threatened" Jonynas when
he faxed a Pfizer employee during the levy process. How-
ever, Jonynas does not explain how Johnson threatened
him, what was said, or whether Johnson could legally
take the threatened action. These accusations do not
merit reversal.

### iv.  Treas. Reg. § 801.3

Finally, the Group asserts that Johnson violated Treasury Regulation § 801.3 entitled "[M]easuring employee performance." Section 801.3(b) instructs evaluators to consider "whether they provided fair and equitable treatment to taxpayers." The district court properly concluded that Johnson could not violate this regulation because it only provided a method for evaluating her performance.

Accordingly, we affirm the entry of summary judgment for the Group's remaining section 7433 claims.

## B.  Refund and Abatement Claims

### 1.  The Group's Claims

The district court properly dismissed the Group's refund claims. The Group apparently does not challenge this conclusion on appeal. Before a plaintiff can bring suit in district court, it must file "a claim for refund or credit . . . with the [IRS]." I.R.C. § 7422(a). There are time limits on filing an administrative claim, however. Any "[c]laim for credit or refund of an overpayment . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later." I.R.C. § 6511(a). In addition to the administrative remedies requirement, a refund suit is limited to overpayment, I.R.C. § 6402(a), which is payment in excess of what is due. *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947).

The Group's refund claims are time-barred. The Group made voluntary payments in February, May, and June 2002, which were applied to outstanding taxes for 2000, 2001, and 2002. The Group filed its administrative refund claim on July 1, 2005—over three years after the returns and two years after payment. Thus, the Group's claims do not meet the requirements of the statute. Moreover, refund claims are limited to overpayment, and the Group does not allege it paid more than it owed. The Group's situation is analogous to *Schon v. United States*, where we held that a company's assertion that the IRS should have applied its payments to another liability does not constitute overpayment when it admits that it still owes taxes to the IRS. 759 F.2d 614, 617 (7th Cir. 1985). Further, the Group appears to seek a declaratory judgment that the IRS should have allocated the taxes to the trust fund portion. However, the Declaratory Judgment Act bars relief "with respect to federal taxes." 28 U.S.C. 2201; *Schon*, 759 F.2d at 617-18. We affirm the district court's dismissal of these claims.

### 2. Gessert's Claims

Finally, Gessert argues his trust fund recovery penalty should be lowered under I.R.C. § 7422. To this end, he claims that the Group and Johnson orally agreed that voluntary payments would be allocated to the Group's trust fund liabilities. The government counters that the IRS honors only *written* directions to apply funds to a specific liability. Accordingly, the IRS contends it was free to apply the funds in its own best interest. The IRS

generally prefers applying payments to the non-trust fund liability because it can recover the trust fund portion from another person. And, "[o]nce the corporation is out of business, the United States can kiss goodbye any non-trust fund taxes owed [to] it but not paid." *See United States v. Schroder*, 900 F.2d 1144, 1146 n.1 (7th Cir. 1990).

As previously mentioned, 28 U.S.C. § 1346 authorizes "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." Gessert argues that his tax fund recovery penalty is erroneously high because the IRS should have credited the Group's voluntary payments to its trust fund liability thereby lowering Gessert's penalty liability.

Unlike the Group's claims, the parties agree that Gessert's claim is timely, although the district court ruled otherwise. Generally, a party must pay his entire tax liability before bringing a viable suit. *Flora v. United States*, 357 U.S. 63 (1958). Thus, in the Group's case, it must pay its entire tax liability before it seeks a refund for overpayment. However, divisible taxes are treated differently. Examples of divisible taxes include excise taxes, where the tax is assessed "per transaction" or "per head." Trust fund penalty taxes are treated as "per employee"—i.e., each employee's tax withheld but not paid

over constitutes a separate transaction, making it divisible. A taxpayer satisfies the administrative prerequisites for divisible taxes by paying the tax for a single transaction in each applicable period. MICHAEL SALTZMAN, IRS PRACTICE AND PROCEDURE § 11.06 (2d ed. rev. 2002). Taxpayers can challenge trust fund penalty liabilities by paying the tax for one employee for each applicable period and filing an administrative claim within two years of payment or three of the return. Gessert satisfied these requirements by paying $100 for each period he was assessed trust fund penalty liability.

"IRS policy permits taxpayers who 'voluntarily' submit payments to the IRS to designate the tax liability to which the payment will apply." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 548 (1990) (citation omitted). Over time, the IRS has modified the scope of this right. At one time, the IRS required only "directions" from taxpayers in order to effectuate a directed payment. *See* Rev. Rul. 73-305, 1973-2 C.B. 43. However, the IRS subsequently curtailed the scope of the right that it had initially authorized, requiring that taxpayers provide "*specific written direction* as to the applications of the payment." Rev. Proc. 2002-26 § 3.01 (emphasis added). Absent written directions, the "Service will apply the payment to periods in the order of priority that the Service determines will serve [the Service's] best interest." *Id.* at § 3.02.

Thus, to the extent that at one time the IRS permitted oral directions to effectuate a directed payment, under revenue procedure 2002-26 (applicable here), a taxpayer

must specify in writing the payment's designation. *See Martin v. Commissioner*, 38 F. App'x 980, 984 (4th Cir. 2002) ("[U]nless a taxpayer provides specific written instructions for the application of a voluntary payment, the IRS may apply the payment as it wishes."). Here, no specific written direction was provided to the IRS regarding the designation of the Group's voluntary payments. Johnson was therefore entitled to apply the payments in the best interest of the IRS. Her application of the voluntary payments to the non-trust fund liability was not in error and does not merit reversal.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.