Laurie L. MUSIC, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civil Action No. 2:12–cv–00220–WCO.

United States District Court,
N.D. Georgia,
Gainesville Division.

Signed April 17, 2014.

Laurie L. Music, Epworth, GA, pro se.

Steven C. Woodliff, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER

WILLIAM C. O'KELLEY, Senior District Judge.

This is a tax controversy arising from an IRS-imposed levy against plaintiff, Laurie L. Music. Plaintiff, proceeding *pro se*, claims that the IRS violated 26 U.S.C. § 7433 by failing to send a notice of levy to plaintiff's last known address, which it is required to send pursuant to 26 U.S.C. § 6331(d). The central issue is whether the IRS exercised "reasonable diligence" when the IRS sent a notice of levy to plaintiff's "last known address" even though previous letters sent to that address had been returned undelivered.

On April 1, 2014, the court held a bench trial and received evidence from both parties. After a careful review of the record and the testimony presented, the court finds that plaintiff is entitled to judgment in her favor. The IRS failed to exercise "reasonable diligence" in ascertaining plaintiff's "last known address." However, plaintiff's victory is somewhat pyrrhic; the entirety of her requested damages were not proximately caused by the IRS' negligence and even if they were, she could have reasonably mitigated the damages.

Although plaintiff has not requested it, the court will take judicial notice that plaintiff paid a $350 filing fee to file this action and award that cost as damages. Therefore, plaintiff is entitled to judgment in her favor against defendant for $350.

## I. Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1346(a). Section 1346(a) grants this court original jurisdiction over any action against the United States for the violation of internal revenue laws. 26 U.S.C. § 7433 allows a taxpayer to bring an action for civil damages against the United States for the violation of any provision of Title 26, which satisfies the jurisdictional grant embodied in § 1346(a).

Pursuant to Federal Rule of Civil Procedure 52(a), the court makes the following findings of fact and conclusions of law.

## II. Summary of Plaintiff's Claim

### A. Section 7433: A Remedy for IRS Violations of the Tax Code

██ 26 U.S.C. § 7433 allows a taxpayer to recover damages caused by the IRS' disregard of any provision of Title 26. Determining liability under § 7433 is a two-step process: first, a plaintiff must prove that the IRS intentionally, recklessly, or negligently disregarded part of Title 26 in connection with the collection of the plaintiff's federal tax liability and, second, the plaintiff must provide evidence of damages.

In this case, plaintiff claims that the IRS violated 26 U.S.C. § 6331(d)(1); the statute allows the IRS to levy upon taxpayer property *only if* the IRS sends the taxpayer notice of the impending levy at least thirty days before the levy goes into effect. 26 U.S.C. § 6331(d)(2). The IRS provides satisfactory notice by (1) giving the notice to the taxpayer, (2) leaving the notice at the taxpayer's dwelling or usual place of business, or (3) sending the notice by certified or registered mail to the taxpayer's "last known address." 26 U.S.C. § 6331(d)(2).

Defendant contends that the IRS complied with § 6331(d)(1–2) by sending the notice of levy to plaintiff's last known address.

### B. Framework Governing Last Known Address Determinations

██ In general, a taxpayer's last known address is the address that appears on the taxpayer's most recently filed tax return. 26 C.F.R. § 301.6212–2(a). The taxpayer's last known address will not change unless the IRS is given "clear and concise notification of a different address." *Id.* The taxpayer has the burden to show that she gave the IRS clear and concise notification of the new address. *See Pugsley v. Comm'r*, 749 F.2d 691, 693 n. 1 (11th Cir.1985) (citation omitted). A taxpayer may provide clear and concise notification by completing one of the acts enumerated in Revenue Procedure 2010–16. *See* Rev. Proc.2010–16, Section 4–5 (April 16, 2010). These acts include leaving a forwarding address with the United States Postal Service, filing a tax return bearing a different address, sending the IRS a Form 8822 or a written statement requesting a change of address, calling the IRS, and updating the address through the IRS' website.

██ However, this statutory and regulatory framework does not immunize the IRS from using common sense. The IRS must exercise "reasonable diligence in determining the last known address." *Navolio*, 334 Fed.Appx. 204, 208 (11th Cir.2009) (citation omitted). The IRS' burden to exercise reasonable diligence is distinct from the taxpayer's burden to notify the IRS of a change in her address. *See Sicari v. Comm'r*, 136 F.3d 925, 928 (2d Cir.1998) (citation omitted). This inquiry focuses on "the information available to the IRS at the time it issued" a notice. *Mulder v. Comm'r*, 855 F.2d 208, 211 (5th Cir.1988) (citation omitted). "What the IRS knew or should have known is deter-

mined by consideration of all relevant facts and circumstances." *Id.*

## III. Findings of Fact

Plaintiff, a former school teacher, last filed a tax return approximately fifteen years ago. At the time, she lived in Summerfield, Florida, and her tax return listed her address as Summerfield, Florida. Accordingly, the IRS considered plaintiff's last known address to be Summerfield, Florida.

Sometime around 1998, plaintiff moved from Florida to Blue Ridge, Georgia and began working as a school teacher for the Cherokee County School Board. When plaintiff moved from Florida to Georgia, she did not leave a forwarding address with the Postal Service, and she did not inform the IRS that she had moved. She did not file a federal income tax return for the years 1999–2005.

Plaintiff's continued abstention from filing income tax returns piqued the IRS' interest. Sometime in August, 2005, the IRS sent a letter to plaintiff's Summerfield address stating that the IRS had no record of receiving her tax returns for the 2001–2003 tax years. Sensibly, the IRS sent the letter to Summerfield, Florida, because that was plaintiff's last known address. The IRS did not receive a response to its inquiry, so the IRS searched for an alternate address to send a follow-up letter. Plaintiff's W–2 listed an address in Blue Ridge, Georgia, and the IRS used that address for a follow-up letter dated September 3, 2005. (Pl.'s Ex. 2 at 12). Plaintiff received the Blue Ridge letter and responded that she was not required to file a tax return; under her (extremely flawed) reading of the tax code, she did not have any income. (*Id.* at 14). She also claimed that she had not received any letters from the IRS other than the letter dated September 3, 2005. (*Id.*).

In late 2005, plaintiff moved from Blue Ridge, Georgia to Epworth, Georgia. She did not leave a forwarding address with the Post Office, and she did not inform the IRS that she moved.

In March 2007, plaintiff was again subject to IRS scrutiny after she claimed that she was completely exempt from withholding. By letter dated March 1, 2007, IRS Compliance Services informed plaintiff's employer that she was not entitled to complete exemption from withholding. (*Id.* at 15). On March 18, 2007, plaintiff sent a letter demanding that the IRS honor the Form W–4 she gave to her employer. (*Id.* at 18). The letter was sent from her Epworth address. The IRS sent a response to plaintiff's Summerfield address; less than two weeks later, the letter was returned undelivered. On June 21, 2007, the IRS readdressed the letter to plaintiff's Epworth address. (*Id.* at 19–20). Plaintiff received the letter and sent a response bearing her Epworth address. (*Id.* at 23). On July 27, 2007, the IRS sent a reply to plaintiff's response at her Epworth address. (*Id.* at 24).

After plaintiff failed to file income tax returns for the 2004–06 tax years, the IRS sent plaintiff a notice of deficiency to her Summerfield address. Plaintiff did not challenge the notice of deficiency. Subsequently, the IRS sent a notice and demand for payment to plaintiff's Summerfield address. Plaintiff did not respond. The IRS followed up by sending notice of intent to levy on June 7, 2010 and September 3, 2010, both of which were sent to plaintiff's Summerfield address. (*See* Def.'s Ex. 1–2). When plaintiff failed to respond to these notices, the IRS issued a notice of levy to plaintiff's employer on November 1, 2010. (Pl.'s Ex. 4 at 1).

The levy reduced her pay to $779.17. She quit her job the day after she received

her levied paycheck. Plaintiff claims that this diminution in her paycheck forced her to quit her job because her net income was insufficient to pay the costs of commuting to and from work in addition to her living expenses. Plaintiff did not contact the IRS before she quit her job. Plaintiff did not attempt to get another job after she left her position with her last employer.

## IV. Conclusions of Law

The United States may be liable for taxpayer damages incurred due to the intentional, reckless, or negligent disregard of any provision of Title 26 by an IRS officer or employee in connection with the collection of a taxpayer's federal tax. As a preliminary matter, the taxpayer must show that she has exhausted her administrative remedies. 26 U.S.C. § 7433(d)(1). If she has done so, then she must demonstrate that the IRS intentionally, recklessly, or knowingly disregarded a provision of the Internal Revenue Code in connection the collection of federal tax with respect to the taxpayer. If the court finds that the taxpayer established liability, then the taxpayer is entitled to damages.

Section 7433 allows the damaged taxpayer to recover the sum of "actual, direct economic damages sustained by the plaintiff as a proximate result" of the IRS' conduct *and* the "costs of the action." The statute caps recoverable damages at $1,000,000 if the conduct was intentional or reckless and at $100,000 if the conduct was negligent. 26 U.S.C. § 7433(b).

### A. Plaintiff Exhausted Her Administrative Remedies

■ Section 7433 prohibits awarding a judgment for damages unless the court determines that the plaintiff has exhausted the administrative remedies available to her. *See* 26 U.S.C. § 7433(d)(1).[1] Plaintiff could file her suit in district court after the earlier of the date six months after the date that she filed her administrative claim with the IRS and the date that the IRS rendered a decision on her claim.

Plaintiff filed an administrative claim on February 28, 2012, and the IRS denied her claim on October 17, 2012. (Pl.'s Ex. 1). Therefore, plaintiff could file her claim in district court after August 28, 2012. Since plaintiff filed her complaint on September 19, 2012, she satisfied the statute's administrative exhaustion requirement.

### B. The IRS Negligently Violated 26 U.S.C. § 6331

■ The IRS imposed a levy on plaintiff's account without providing proper notice. Section 6331 requires the IRS to send notification to the taxpayer's last known address before levying upon taxpayer property to satisfy federal tax debts. The IRS negligently violated § 6331 by sending notices of intent to levy to an address when previous letters sent to that address were returned undeliverable.

Numerous courts have found that the IRS failed to exercise reasonable diligence when the IRS continued to send correspondence to the taxpayer's last known address even though mail sent to that ad-

---

1. This is not a limitation on this court's subject matter jurisdiction. Section 7433 does not allow "a judgment for damages" if the plaintiff failed to exhaust her administrative remedies. Other tax controversy provisions state that "no suit" shall be entertained in district court until the taxpayer complied with the applicable administrative procedures.

*Compare* 26 U.S.C. § 7433, *with* 26 U.S.C. § 7422; *see also Galvez v. IRS*, 448 Fed.Appx. 880, 886–887 (11th Cir.2011) (holding that § 7433's exhaustion requirement is not a jurisdictional bar to suit). Therefore, the exhaustion requirement is considered to be an element of the claim rather than a limitation on subject matter jurisdiction.

dress was returned undelivered. *See, e.g., Terrell v. Comm'r,* 625 F.3d 254, 260 (5th Cir.2010) ("[T]he IRS is not entitled to rely on a lack of notification once it is on notice that its address on file is incorrect.") (citation omitted); *Mulder,* 855 F.2d 208, 211 (5th Cir.1988) (finding that the IRS failed to exercise reasonable diligence when it sent the notice of deficiency to an address when two previous letters were returned undelivered); *United States v. Bell,* 183 B.R. 650, 653–54 (S.D.Fla.1995).

The correspondence between plaintiff and the IRS is summarized in the following table:

| Date | From | Address | Result |
|------|------|---------|--------|
| Late August 2005 | IRS | Summerfield | Unknown |
| 9/3/2005 | IRS | Blue Ridge | Received |
| 3/18/2007 | Plaintiff | Epworth | |
| 4/30/2007 | IRS | Summerfield | Undelivered |
| 6/21/2007 | IRS | Epworth | Delivered |
| 6/25/2007 | Plaintiff | Epworth | |
| 7/27/2007 | IRS | Epworth | Delivered |
| 10/13/2009 | IRS | Summerfield | Unknown |
| 4/18–25/2010 | IRS | Summerfield | Unknown |
| 6/7/2010 | IRS | Summerfield | Unknown |
| 9/3/2010 | IRS | Summerfield | Undelivered |

By June 7, 2010, the date on which the IRS sent the first of two notices of intent to levy, at least one and as many as three letters sent to plaintiff's Summerfield address had been returned undelivered.[2] This fact alone is sufficient to find that the IRS failed to exercise reasonable diligence.

Moreover, any concerns initially raised by a history of undelivered mail would have been confirmed by a cursory glance at plaintiff's file. Plaintiff's employer was located in Georgia, and plaintiff responded only to IRS correspondence sent to Georgia addresses. Despite these clear indications that plaintiff no longer lived at her Summerfield address and almost certainly lived outside Florida, the IRS sent the notice of intent to levy to plaintiff's Summerfield address. Every piece of evidence points to the IRS' blind reliance on the master file's "last known address" despite obvious indications that plaintiff no longer lived at that address.

■ "When the IRS knows or should know that [a notice] sent to the taxpayer's last known address will not reach the taxpayer, the IRS's equitable obligation to exercise reasonable diligence requires more than merely mailing the notice to that address." *Gaw v. Comm'r,* 45 F.3d 461, 467 (D.C.Cir.1995). Defendant presented no evidence tending to indicate reasonable diligence on the part of the IRS. Instead, defendant emphasized plaintiff's failure to update her address despite clear opportunities to do so. Although plaintiff did not update her last known address, the

**2.** The record unambiguously demonstrates that two certified letters sent by the IRS to plaintiff were returned undelivered. The dates of the October 2009, April 2010, and June 2010 notices are unclear. These three notices are sandwiched between two returned-as-undelivered notices, so the court will infer that they were also returned undelivered. The court may infer that the three "unknown" notices were also returned undelivered given that notices sent to the same address before and after the three "unknown" notices were returned undelivered.

court finds that the IRS did not exercise reasonable diligence because it "failed to take *any* steps to determine [plaintiff's] correct address" after it received the returned mail. *See Terrell v. Comm'r,* 625 F.3d at 260 (emphasis in original).

So what could the IRS have done differently? The IRS could have sent another notice of intent to levy to plaintiff's business address. Section 6331 does not require the notice to be sent to the taxpayer's last known address; the IRS satisfies its statutory obligation by giving the notice to the taxpayer in person *or* leaving the notice at the taxpayer's "dwelling or usual place of business" *or* sending the notice by certified or registered mail to the taxpayer's last known address. 26 U.S.C. § 6331. Her employer's address was listed on her W–4, and the IRS actually used plaintiff's business address in earlier correspondence. Most importantly, there was no indication that plaintiff had changed jobs or that her work address was no longer correct. Therefore, even if plaintiff did not receive notice sent to her work address, the notice would have been effective because the IRS would have no reason to believe that notice sent to her work address would not be received.[3]

Alternatively, the IRS could have performed a computer search using plaintiff's and plaintiff's husband's social security numbers, inquired at plaintiff's workplace, searched Department of Motor Vehicle records, and done a number of actions that might have located plaintiff's current address. *See Wallin v. Comm'r,* 744 F.2d 674, 677 (9th Cir.1984); *see also Mulder,* 855 F.2d at 212.

Defendant claims that it is administratively impossible to keep an accurate list of every taxpayer's address and that allowing taxpayers to avoid otherwise valid notices by moving would force the IRS to play a "shell game" with recalcitrant taxpayers.

Defendant's argument is not entirely without merit. However, the court's conclusion does not require the IRS to provide actual notice. *See United States v. Goldston,* 324 Fed.Appx. 835, 837–38 (11th Cir.2009) (holding that actual receipt of a notice of deficiency is not required if the notice is mailed to the taxpayer's last known address); *see also Bell,* 183 B.R. at 653 n. 3 (S.D.Fla.1995) ("The IRS is not required to find the taxpayer's actual current address; it must simply exercise reasonable diligence in attempting to find the taxpayer's last known address."). Furthermore, the IRS' duty to exercise reasonable diligence is an "equitable obligation," and the courts will not allow deliberate obfuscation to serve as a valid defense to IRS collection activity. *See Gaw,* 45 F.3d at 467 (citing *Marks v. Comm'r,* 947 F.2d 983, 986 (D.C.Cir. 1991)). The court's decision is limited to the unremarkable proposition that the IRS cannot send notices to an address that it knows or should know is invalid and then claim that it satisfied its obligation to provide notice—especially when the statute expressly lists multiple avenues to provide effective notice.

Defendant also asks the court to draw a distinction between cases handled by the IRS' Automated Collection System ("ACS") and cases handled by IRS agents. Since plaintiff's potential tax liability was relatively small, her case was handled by the computer driven ACS rather than assigned to a revenue officer. Defendant argues that reasonable diligence "cannot be assessed in a vacuum" and that the

---

**3.** The IRS also could have satisfied its notice obligation by sending the notice to plaintiff's "dwelling." Plaintiff's Epworth address, even though it did not qualify as plaintiff's last known address, could be considered her "dwelling" within the meaning of § 6331.

court should distinguish between cases handled by the ACS and those handled by revenue officers.

In other words, defendant asks the court to vary the IRS' "reasonable diligence" obligation based on whether the case is handled by an IRS officer or the ACS. The court will not do so. Defendant's position has no statutory or regulatory support, and it is contrary to the procedural due process rights extended by Congress to taxpayers in § 6331.

Therefore, the court concludes that an IRS employee or officer negligently violated § 6331(d) by sending the notice of intent to levy to an address where previous mail had been returned undelivered.

### C. Damages: $0.00 in Actual, Direct Economic Damages and $350 in Costs of the Action

If a plaintiff establishes that an officer or employee of the IRS intentionally, recklessly, or negligently disregarded Title 26, the plaintiff is entitled to damages. 26 U.S.C. § 7433(a). The statute caps damages at the lesser of $1,000,000 (or $100,000 in the case of negligence) or the sum of (1) actual, direct economic damages sustained by the plaintiff as a proximate result of the IRS' conduct and (2) the costs of the action. 26 U.S.C. § 7433(b). The plaintiff has the obligation to mitigate her actual, direct economic damages. 26 U.S.C. § 7433(d)(2).

### 1. The IRS' Negligent Conduct Did Not Proximately Cause Plaintiff to Suffer Any Actual, Direct Economic Damages

 Plaintiff did not sustain any actual, direct economic damages as a proximate result of the IRS' negligent collection activity. Actual, direct economic damages are "actual pecuniary damages sustained by the taxpayer as the proximate result of the [negligent] actions of an [IRS employee]." 26 C.F.R. § 301.7433–1(b)(1). "Injuries such as inconvenience, emotional distress and loss of reputation are compensable only to the extent that they result in actual pecuniary damages." *Id.* Any actual pecuniary damages must be proximately caused by the IRS' negligent collection activity. *Compare* 26 U.S.C. § 7433(b)(1) (allowing recovery for damages "as a proximate result" of negligent collection activity), *with* 26 U.S.C. § 7432 (allowing recovery for damages which, "but for the actions of the defendant," would not have been sustained).

Plaintiff claims that she "was forced" to quit her job as a proximate result of the IRS levy. Plaintiff contends that her levied paycheck was insufficient to pay her work-related expenses, which led her to quit her job and suffer over $1,000,000 in damages. (*See* Pl.'s Ex. 7 at 38).

Plaintiff's damages were not the proximate result of the IRS' negligent actions. Plaintiff would have suffered the same "damages" even if she received the notice of intent to levy. Plaintiff claims that she does not need to file a tax return because her "wages" are not considered "income" under the tax code. Her position is patently frivolous. *See* IRS Notice 2006–31 (April 10, 2006). If she requested a hearing on the underlying assessment's validity, the IRS could disregard her request as if it were never submitted. *See* 26 U.S.C. § 6330(g) (granting the Secretary the right to disregard a requested hearing if the request is based on a position that the IRS has identified as "frivolous"). In fact, had she attempted to contest the assessment's validity, she probably would have been penalized for filing a frivolous hearing request. *See* 26 U.S.C. § 6330(b)(1) (imposing a $5,000 penalty on any person who submits a frivolous hearing request under § 6330). Plaintiff's damages are a

result of the size of her outstanding tax liability relative to her income; whether she received effective notice would not change her income or her tax liability but instead would change *only when she became aware of that liability's existence.*

Plaintiff mistakenly equivocates the validity of the levy with the validity of the assessment giving rise to the levy. Even though the levy did not comply with a statutory notice requirement, plaintiff still owes back taxes. All the IRS needs to do to effect a procedurally compliant levy is to provide notice thirty days before reimposing the levy. Accordingly, plaintiff's damages are, at most, the sum of the pre-levy paychecks she would have received in the thirty days after the levy went into effect.

Even drastically reduced, plaintiff's remaining damages were not foreseeable. Plaintiff's quitting her job is not a natural and probable consequence of an incorrectly addressed letter.

Additionally, plaintiff could have reasonably mitigated all of her claimed damages. Plaintiff could have called the IRS before quitting her job to contest the levy. IRS regulations expressly authorize a post-levy collection due process hearing, and plaintiff could have worked with the IRS to reduce the levy to an amount that would allow her to continue working. *See* 26 C.F.R. § 301.6330–1. Obviously, the last thing the IRS wants is an unemployed debtor; no paycheck means no funds to levy upon.

Plaintiff did not act reasonably after she received the notice of levy from her employer. The notice states that plaintiff should call or write the IRS if she has any questions and that written questions should include the taxpayer's telephone number and the best time to call. (Pl.'s Ex. 4 at 1). Plaintiff did not call the IRS; she wrote a letter—and she did not include her phone number. Her decision to write rather than call is baffling. Almost every piece of correspondence to plaintiff from the IRS mentions previous attempts to contact plaintiff. Almost every one of plaintiff's responses claim ignorance of previous IRS correspondence. A reasonable person would not write the IRS when the issue appears to be that written IRS notices are not being sent to the proper address. A reasonable person would not immediately quit her job before trying to talk to the IRS and uncover why she owes approximately $38,000 in unpaid taxes.

Therefore, the court finds that plaintiff did not suffer any actual, direct economic damages as a proximate result of the IRS' negligent collection activity. Even if any of plaintiff's claimed damages were actual, direct economic damages, she could have reasonably mitigated her damages and failed to do so.

### 2. Plaintiff Incurred $350.00 in "Cost of the Action" Damages

 Nonetheless, her lack of actual, direct economic damages does not doom her claim because of a statutory quirk. The statute states that the defendant *"shall be liable"* for actual, direct economic damages plus the costs of the action. 26 C.F.R. § 301.7433–1(c) defines "costs of the action" as:

(1) Fees of the clerk and marshall [sic];

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of paper necessarily obtained for use in the case;

(5) Docket fees; and

(6) Compensation of court appointed experts and interpreters.

Somewhat curiously, the statute opts to define "costs of the action" as damages rather than costs. *See* 26 C.F.R. § 301.7433–1(c) ("Costs of the action *recoverable as damages under this section* are limited to the following costs. . . ."). Accordingly, a plaintiff does not need to sustain any actual, direct economic damages to maintain a claim under section 7433; the plaintiff suffers recoverable damages simply by filing the suit.

The court recognizes that its interpretation of the statute necessarily conflicts with a significant number of courts that have dismissed section 7433 claims by holding that the plaintiff did not suffer any actual, direct economic damages. *See, e.g., Abel v. United States,* 2000 WL 145396, at *5 (D.Or. Feb. 10, 2000) ("Specifically, damages under Section 7433 are limited to actual, direct economic damages. . . . Accordingly, a Section 7433 claim is properly rejected when the record demonstrates that the taxpayer has not suffered any actual, direct economic damages.") (internal quotation marks omitted).[4] Respectfully, the court believes the *Abel* decision and others like it are flawed because they ignore the second category of damages: costs of the action.

Confusion on this point is understandable. In most cases, a court will enter judgment in the prevailing party's favor and award "x" in damages and "y" in expenses and costs. Damages are what they are, and the court must award them. However, awarding costs is usually optional and considered an award distinct from damages. *See* 28 U.S.C. § 1920 ("A judge or clerk of any court of the United States *may* tax as costs the following . . . ."); *see*

*also* 28 U.S.C. § 2412 (stating that costs listed in § 1920 "may be awarded" to the prevailing party in any civil action brought against the United States); LR 54.1, NDGa (requiring the prevailing party to file a bill of costs within thirty days after the entry of judgment). Section 7433 deviates from the normal bifurcation between "damages" and "costs" by classifying certain "costs of the action" as "damages" and *requiring* the reviewing court to award "costs of the action." The functional result of this distinction is that a taxpayer's claim under § 7433 *may not* be dismissed solely on the ground that the taxpayer did not suffer any actual, direct economic damages. A successful § 7433 claim hinges on a finding that the IRS intentionally, recklessly, or negligently violated Title 26–not on whether the taxpayer suffered actual, direct economic damages.

If Congress intended to limit viable § 7433 claims to claims where the taxpayer suffered actual, direct economic damages, then it could have easily done so by eliminating § 7433(b)(2) and leaving the rest of the statutory scheme in place. A plaintiff would still be able to recover what the statute defines as "costs of the action" by filing a claim under 26 U.S.C. § 7430. *See* 26 U.S.C. § 7430(c)(1)(A) (allowing the prevailing party to recover "reasonable litigation costs," including "reasonable court costs"). However, unlike the current statute, a plaintiff could not use its filing fee or other nominal cost to ferry a § 7433 claim through summary judgment despite the absence of any actual, direct economic damages.

---

4. *See also Gessert v. United States,* 703 F.3d 1028, 1034 (7th Cir.2013) ("We agree with the district court—the [plaintiff] must allege actual economic damage to state a claim under section 7433."); *O'Brien v. United States,* 73 Fed.Appx. 958, 960 (9th Cir.2003); *Chick v. United States,* 2000 WL 1175654, at *1 (N.D.Ohio June 30, 2000) ("Because he has not suffered any actual, direct loss from the IRS's actions, [plaintiff] cannot state a claim under § 7433.").

 The court agrees that the result reached by the *Abel* court is more desirable for practical and policy reasons. *See Gessert,* 703 F.3d at 1034 (requiring actual, direct economic damages because holding otherwise would allow "moneyed plaintiffs [to] frustrate collection efforts by filing suits for claims where they suffered no harm"). Nonetheless, the statute's plain language indicates that actual, direct economic damages are not necessary to maintain a claim under § 7433. When "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (internal quotation marks omitted)). Although the result compelled by the statute's plain language is inconsistent with the traditional notion of "damages" and "costs" as distinct categories of recompense, it is not absurd.

Plaintiff is entitled to recover her costs of the action because she established that the IRS negligently disregarded 26 U.S.C. § 6331. She is entitled to this recovery even though she failed to prove that the IRS' action proximately caused her to suffer any actual, direct economic damages. Plaintiff did not submit any costs of the action as part of her request for damages. Nonetheless, given her status as a *pro se* litigant, the court will take judicial notice of the fact that she paid a $350 filing fee to file her complaint. (*See* Compl. Docket Entry, ECF No. 1) (noting that plaintiff paid a $350 filing fee, receipt number GAN200002249).[5] Docket fees are considered "costs of the action." 26 C.F.R. § 301.7433–1(c)(5). Therefore, the court finds that plaintiff is entitled to judgment in her favor against defendant totaling $350.00 ($0.00 in actual, direct economic damages plus $350.00 in costs of the action).

## V. Conclusion

The IRS violated § 26 U.S.C. § 6331 by sending notice of its intent to levy to an address where previous correspondence had been returned undelivered. By doing so, the IRS failed to satisfy its obligation to exercise "reasonable diligence" to determine plaintiff's last known address. Plaintiff is entitled to her actual, direct economic damages plus the costs of the action. The IRS' negligent conduct did not proximately cause any actual, direct economic damages to plaintiff, but plaintiff incurred $350 in "costs of the action" damages by filing her complaint. The court finds that plaintiff is entitled to judgment in her favor against defendant for $350. The Clerk of Court is **DIRECTED** to enter judgment accordingly. Defendant's oral motion for judgment on partial findings is **DENIED.**

---

5. The court may take judicial notice of any fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED.R.EVID. 201(b). The court may take judicial notice of adjudicative facts on its own initiative. FED. R.EVID. 201(c).

Although plaintiff failed to list her filing fee as damages, the court takes judicial notice that the filing fee for a complaint in this court on September 12, 2012, was $350. *See Frisch v. Comm'r,* 87 T.C. 838, 842 (T.C.1986) (taking judicial notice of the filing fee for a petition in tax court). The court finds that plaintiff actually incurred this expense.